BORGESS INVESTMENT COMPANY, *Appellant*, v. VETTE *et al.*

Division Two, February 16, 1898.

1. **Waiver**: TAKING DEPOSITION OF INCOMPETENT WITNESS. When a party to a suit takes a deposition of the other, who is incompetent to testify to facts involving the terms of a transaction between himself and a deceased person, he thereby waives the incompetency of that other as a witness for any purpose, whether the deposition be read upon the trial or not.

2. **Evidence**: BOOK ENTRIES. When book entries are made by a party himself, or by a clerk, in the usual course of business, contemporaneously with the transactions, they are admissible in evidence, and this is true even though they are made by the party himself, or may in some way determine the title or ownership of property.

3. ———: ———: INCOMPETENCY WAIVED. A case in which, defendant's incompetency being waived by the taking of his deposition by the opposite party, it is *held* that a "debit book," kept by defendant during a brief partnership between himself and a brother, in which he sometimes made entries, but which were chiefly made by the bookkeeper, who made the entry of the transaction in question and identified the book, is properly admissible in evidence.

4. **Negotiable Note**: TRANSFER BEFORE MATURITY: SECRET TRUSTS. When a negotiable promissory note is transferred before maturity, the presumption is that the transferee or assignee takes it in good faith and without notice on his part of secret trusts or claims attached thereto in favor of third parties, or that the note was without consideration. And where the note is secured by a deed of trust, it also passes with the transfer of the note, as incident thereto, free from all defenses except such as could be made against the note.

5.  ——: GOOD FAITH OF HOLDER.  Suspicion that the note is without consideration, even though brought home to the transferee before he acquires it, will not be sufficient to prevent a recovery by him, nor will bad faith on his part in taking it.

6.  ——: DEED OF TRUST: RELEASE BY TRUSTEE AND PAYEE OF NOTE AFTER TRANSFER.  The payee of a negotiable note transferred it for value before maturity, and afterward he and the trustee made a release deed of the deed of trust, which was recorded, and then the grantee of said release deed, being the maker of the deed of trust, sold the land, and the plaintiff, through *mesne* conveyances, relying on the records, became the owner.  *Held*, that the release by the trustee and payee was void, and that a sale under the deed of trust could not be enjoined at the instance of the plaintiff.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*Stewart, Cunningham & Eliot* for appellant.

(1) When one party to a transaction is dead, the statute excludes the testimony of the other party to any matter pertaining to the contract or transaction made by them.  R. S. 1889, sec. 8918.  The disqualification does not, however, extend to relevant matters not immediately involved in the transaction.  *Reichenbach v. Ellerbe,* 115 Mo. 588.  (2) While books of account kept by a party himself or by his clerk are under some circumstances admissible in evidence in his behalf, they are not so admissible when the party himself is disqualified as a witness, unless the action is one for the recovery of a sum or a balance due on account.  *Walsh v. Anchor Milling Co.,* 108 Mo. 277.  (3) The limitation prevents the probative effect of an entry made by the party himself from extending to questions of title or ownership, as has been attempted in this case.  R. S., secs. 8918 and 8919; *Robinson v. Smith,* 111 Mo. 205; *Collins Bros. Drug Co. v. Graddy,*

57 Mo. App. 41; *Fulderson v. Long*, 67 Mo. App. 268; *Seligman v. Rogers*, 113 Mo. 649. (4) The taking of the deposition of the adverse party upon matters not connected with a transaction in respect of which he is disqualified as a witness, does not constitute a waiver of the incompetency. A deposition does not constitute a waiver, unless used at the trial. *Tomlinson v. Ellison*, 104 Mo. 105; 29 Am. and Eng. Ency. of Law, p. 748, and cases cited; *Miller v. Montgomery*, 78 N. Y. 285. (5) Where the issue in a case involve the *bona fides* of one in whose possession a promissory note exists upon allegations to that effect traversed by the other party, the want of consideration in the making of the note, connected with circumstances of suspicion calculated to put the party upon inquiry as to equities, is material to the case. This is particularly so where the proceeding is one in equity and not an action at law upon the note. *Chouteau v. Allen*, 70 Mo. 290; *Ryan v. Gilliam*, 65 Mo. 132; *Brooks v. Owens*, 112 Mo. 264. (6) Where the evidence discloses a state of mixed accounts between a mortgagee and the person from whom the mortgage debt is due, equity will restrain the exercise of a power of sale until an account can be taken. 26 Am. and Eng. Ency. of Law, p. 272, and notes. (7) Where a sale under a power would result in a cloud upon plaintiff's title, unjustly or fraudulently injuring plaintiff's rights, equity will enjoin the sale. *Brooks v. Owens*, 112 Mo. 251; *Murphy v. Simpson*, 42 Mo. App. 654. (8) If the lien of a deed of trust is released by the trustee and the payees of the notes, a presumption of authority and validity exists in favor of an innocent purchaser of the real estate who buys after the recording of such release. One who claims the deed of release to be void must prove the facts which result in that conclusion. *Feld v. Roanoke Inv. Co.*, 123 Mo. 603; *Armstrong v. Robards*, 81 Mo. 445; *White v.*

*Ingram*, 110 Mo. 474; *Pugsley v. Sumner*, 14 Daly (N. Y.), 427; *Railroad v. Brayzil*, 72 Tex. 233.

*Lubke & Muench* for respondents.

(1)   The note and deed of trust in question having, at the time, been held by John H. Vette through transfer from the payee, a release by the original payee and trustee in the deed of trust was void and of no effect as to the true holder.   *Lee v. Clark*, 89 Mo. 553; *Hagerman v. Sutton*, 91 Mo. 533; *State Bank v. Frame*, 112 Mo. 502; *Bartlett v. Eddy*, 49 Mo. App. 32; *Lord v. Schaumloeffel*, 50 Mo. App. 360; *Rice v. McFarland*, 34 Mo. App. 404.   (2) One who takes satisfaction of a deed of trust without the production of the notes is charged with notice of a lack of authority to release. Jones on Mortgages [2 Ed.], sec. 476; *Cummings v. Hurd*, 49 Mo. App. 139. (3) Where a note is transferred before maturity, the purchaser takes it with all presumptions in his favor of a want of notice on his part of secret claims of trusts attached thereto in favor of third parties, etc. The mortgage passes with the note, and on the same footing. He can not be affected by subsequent notice of claims of third persons. *Hagerman v. Sutton*, 91 Mo. 531; *Mayes v. Robinson*, 93 Mo. 114; *Fitzgerald v. Barker*, 96 Mo. 661.   (4)   Parties dealing in commercial paper need only ascertain whether it was knowingly signed or authorized to be signed by the payor, and this is the only inquiry which an innocent purchaser is bound to make. *Briggs v. Ewart*, 51 Mo. 250. (5) Bad faith alone on the part of the purchaser will not defeat his title. Mere suspicion will not suffice, or that he had knowledge of such circumstances as would excite suspicion in the mind of a prudent person. *Hamilton v. Marks*, 63 Mo. 167; *Goodman v. Simonds*, 20 How. (U. S.) 343; *Edwards v. Thomas*, 66 Mo. 483; *Johnson v. McMurry*,

72 Mo. 278; *Mayes v. Robinson*, 93 Mo. 114; *Donovan v. Fox*, 121 Mo. 236. (6) Vette was a competent witness as to both the entries in his book and his dealings with Florida. Plaintiff having made him its witness by summoning him before a notary, and taking his deposition in this case and concerning transactions with Florida, made him competent as to all those transactions, and can not stop his testimony at any point where it becomes inconvenient for plaintiff to have the witness testify. *Tomlinson v. Ellison*, 104 Mo. 114; *Stone v. Hunt*, 114 Mo. 71; *Griffith v. Ess*, 139 Mo. 322; *In re Estate of Soulard*, 141 Mo. 642; R. S. 1889, secs. 8920, 8924. (7) The entry in defendant Vette's book, being a regular contemporaneous entry, made in the book then regularly and necessarily kept in his business, was properly admitted, especially in connection with the testimony of the bookkeeper, who made the entry. The date of the transaction was shown by the independent evidence of the check. *Anchor Milling Co. v. Walsh*, 108 Mo. 277; *Robinson v. Smith*, 111 Mo. 205; *Seligman v. Rogers*, 113 Mo. 649; *Fulkerson v. Long*, 63 Mo. App. 271.

BURGESS, J.—This action was begun by plaintiff in the circuit court of the city of St. Louis to enjoin and restrain the defendants from selling, under a power of sale in a deed of trust given to secure the payment of a promissory note, certain real property in that city.

A temporary injunction was granted, which upon final hearing was dissolved, plaintiff's bill dismissed, and judgment rendered against it for costs.

From the judgment plaintiff appeals.

The petition averred that plaintiff owned a certain lot of ground in the city of St. Louis, which it acquired on January 23, 1894, from Louis Berneso and others, who acquired it in February, 1893, from Wm. J.

McGrade, to whom it had been conveyed on February 1, 1893, by one Josephine Wellington. That Josephine Wellington was the owner of said property on October 25, 1892, on which day she executed a deed of trust thereon to J. V. Boucher, as trustee, to secure to Alonzo K. Florida payment of her notes of even date, being one principal note of $5,000, payable in two years, and one principal note for $3,000, payable in six months after date; one semi-annual interest note for $240, payable in six months, and three semi-annual interest notes of $150 each, payable in twelve to twenty-four months after date, said deed of trust being duly recorded in the recorder's office of the city of St. Louis. That on January 14, 1893, Alonzo K. Florida, being then the holder and owner of said notes, conjointly with J. V. Boucher, the trustee in the deed, for value made to Josephine Wellington a deed of release and quitclaim whereby they discharged the property from the lien of said deed, which deed of release was also duly recorded, whereby any lien of said deed of trust was alleged to have been fully released. That the defendant, Vette, notwithstanding such release, claims to be the owner and holder of one of said promissory notes, of $3,000, and to be entitled to a lien therefor on said realty, and has procured the appointment of his codefendant, John W. Dryden, as trustee, with the powers conferred by said deed of trust. That said Dryden is advertising the property under said deed of trust for sale on February 1, 1895; that said Dryden, notwithstanding his appointment by the court, has no right in said real estate, and said Vette is not legally nor equitably entitled to have it sold under said deed; but that, neverless, the defendants are about to make such sale for the purpose of satisfying said $3,000 note, and to deliver a deed at said sale which will be *prima facie* proof of the recitals therein, and will thus create a cloud

upon plaintiff's title to the property, inasmuch as there is nothing upon the records of said city to show that said Vette is not the owner of said note. That said Vette and Dryden have custody and possession of said deed of trust and of the $3,000 note, but are not in fact the owners thereof, as the same have been paid and satisfied. Plaintiff prayed that defendants might be enjoined from advertising or selling said property, or executing any deed of sale; that the defendants be required to surrender the deed and note for cancellation, to be declared null and void, and for a temporary injunction pending the suit.

On October 7, 1895, defendants entered their voluntary appearance to the cause, and filed their answer and motion to dissolve the injunction, wherein they admitted that defendant Vette was the holder of the $3,000 note, and that defendant Dryden was appointed and acting as trustee under the deed of trust in question, and all other allegations of the petition were denied. Affirmatively the answer set forth that defendant acquired the note from the legal holder, before maturity, for value, in good faith, without notice of any supposed equities; and that if any releases of the deed of trust were entered on the records, the same are illegal, as not having been joined in, or authorized by, defendant Vette, the legal holder of the note and deed of trust; that the whole amount of said note is still due and secured by said deed.

Florida originally owned the property described in the petition and on the same day that the deed of trust in question was executed by Josephine Wellington he conveyed it to her.

On the trial plaintiff showed title to the property to be in it, and also read in evidence the deed of trust which was held by defendant Vette. Also the deed of release, made by Florida and J. V. Boucher, trustee,

dated January 14, 1893, and recorded January 27, 1893.

For the defendants, defendant Vette was called as a witness. Plaintiff objected to his competency. The attention of the trial court was called to the fact that plaintiff had made him a competent witness by examining him, by way of deposition, in this case. This was admitted by plaintiff, but it was claimed that plaintiff had not offered this deposition, and that in taking the same plaintiff had avoided asking the witness questions concerning this particular deed of trust and note held by Vette. The court overruled plaintiff's objection. The deposition in question was not called for nor read, and the witness testified, in substance, that he was examined as a witness in a deposition taken by Mr. Eliot, attorney for plaintiff, and in that deposition was asked by Mr. Eliot concerning dealings with Florida for some years preceding his death. He identified a paid check of $2,640, dated November 4, 1892, which on that day he paid to Alonzo K. Florida for the $3,000 note in question, he having dealt with Florida for years. This check was in the usual form, on the National Bank of the Republic, St. Louis, signed by Vette, payable to A. K. Florida, indorsed by the latter, and cleared by the St. Louis Clearing House on November 5, 1892.

Vette received the recorder's card for the deed of trust and the $3,000 note contemporaneously with the delivery of the check. It took about three weeks to have a deed recorded. He had held the note ever since, and for a while had it in bank for collection. He never knew that a deed of release had been made, and had the note in his possession at that time.

Witness did not remember whether he received an abstract of title at the same time. Florida was in the habit of delivering an abstract, and then, later on, borrowing it, in connection with an effort to sell the

deed of trust.    None of the other notes were received
by witness.    He did not know Josephine Wellington.
He bought the note on the strength of Florida's state-
ment.    Florida usually wanted cash, and whenever he
had the cash in his office he would pay it in that form.
Until asked to look it up carefully, he was under the
impression that this was a cash payment.    He always
charged Florida a discount.    If Florida had a piece of
paper he would bring it in, and either discount the
whole of it, or say he wanted so much money.    There
was no other understanding of any kind about it.    If
he had known anything of an attempted release, he
would have stopped it very quickly.    Florida has paid
him higher discounts than this.    Witness identified a
number of checks which Florida paid him from time
to time, and explained that they were for different loans
and indebtedness.    Witness had a lot of Florida's pa-
per, and the latter would come in and take up the
notes and securities as they came due.    He both
loaned him money and bought paper from him.    Wit-
ness identified the so-called "debit book" kept by
him during a time when he had a brief partnership
with his brother, C. W. Vette.    The book was kept
in his business.    He sometimes wrote in it, but chiefly
the bookkeeper.    The pages of the book were di-
vided into columns, containing respectively the face
value of the note, the amount paid therefor, the
amount of discount deducted, name of party from
whom purchased, and the purchaser.    The entry in
regard to the present transaction was made by the
bookkeeper, Shortal.

Joseph M. Shortal, the bookkeeper of defendant
Vette, thereupon testified that as such he entered this
Florida transaction in Mr. Vette's book.    He also iden-
tified the check of $2,640, Florida's indorsement
thereon, and the cancellation upon payment.    He fully

identified the book in question as having been regularly kept in Mr. Vette's business, and in which witness made most of the entries. The entry was offered in evidence, and received over plaintiff's objection. Witness also explained the meaning of the different columns, and of the entries therein. The book was regularly kept in Mr. Vette's business.

Defendants then offered in evidence the $3,000 note made by Josephine Wellington, and the indorsement of A. K. Florida, to which plaintiff did not object. It was protested for non-payment on April 28, 1893, but the notary's certificate of the protest was excluded on objection.

Defendants rested, and plaintiff in rebuttal proved that good real estate loans, at the date of this transaction, could have been had in the city of St. Louis at the rate of six per cent per annum, and that Mr. Vette, when asked after Florida's death how he had acquired this note, had made the statement that he gave Florida $2,500 in cash for it, but had kept no record of it. The witness, Charles Hewitt, called by plaintiff to prove that Mrs. Wellington had not received full value for the note, admitted, on cross-examination, that Mr. Florida's standing as a real estate dealer and agent in the city of St. Louis was good in October and November, 1892; that he never heard anything against him, nor of anything wrong until he died by his own hand.

The first assignment of error is with respect to the ruling of the court in permitting the defendant to testify over the objection of plaintiff as a witness in his own behalf as to the acquisition of the note in question from A. K. Florida who was dead at the time of the trial. It is conceded by plaintiff that defendant was not disqualified as a witness for all purposes, and that he was competent to testify to any facts within his

knowledge touching the issues in the case which did not involve the terms of the transaction between himself and Florida, but that as to matters involved in such transaction he was not competent to testify. Unless the incompetency of defendant Vette to testify as to matters between himself and Florida which occurred at the time he acquired the note from him, was in some manner waived by plaintiff, it is perfectly clear that he was not competent to testify with respect thereto. (R. S. 1889, sec. 8918.) But it is contended by defendants that all objections as to his competency were waived by plaintiff when it took his deposition in this case. The deposition was not read on the trial, and it is claimed by plaintiff that in taking the same, plaintiff avoided asking the witness questions concerning this particular deed of trust and note held by him. But Vette testified on the trial in effect that in the deposition he was asked by the attorney for plaintiff concerning dealings with Florida for several years preceding his death, and that he identified the check for $2,640 dated November 4, 1892, which he on that day paid Florida for the note in question. It is said in *Tomlinson v. Ellison*, 104 Mo. 114: "The fact that plaintiff had taken defendant's deposition in the same action amounted to a waiver of any alleged incompetency on his part." While it was said in *Ess v. Griffith*, 139 Mo. 322, that "the statement of the legal principle quoted was not necessary to a decision of the case, and can only be regarded as the *dictum* of the judge who wrote the opinion," it was ruled that where the deposition of a party to a suit, who was at the time incompetent to testify as a witness in his own behalf, was taken by the adverse party, that the question of his incompetency was by reason thereof waived, and that he then became a competent witness in his own behalf in the trial of the cause, whether the deposition was read

on the trial or not.  It was said: "Plaintiff had the
right to examine defendant Pierce as a witness, but in
doing so he waived the right to insist on excluding him
when called by defendant.  This would certainly be so
as to all matters concerning which he was examined by
plaintiff.  He can not, in fairness, be allowed to assert
his competency, if his evidence is found to be favora-
ble, and deny it if found to be unfavorable."  *In re
Estate of Henry G. Soulard*, 141 Mo. 642.  "A waiver
of objection to competency made at one stage of the
taking of testimony is a waiver during the whole prog-
ress of that proceeding."  Rap. Wit., sec. 178, and
authorities cited in *Ess* case, *supra*.  It would seem
from these authorities and upon principle as well, that
when plaintiff took the deposition of Vette and filed it
in the cause, it thereby waived his incompetency as a
witness for all purposes, whether the deposition was
read upon the trial or not.

Complaint is made by plaintiff of the action of the
court in admitting in evidence over the company's ob-
jection the so-called "debit book," kept by defendant
Vette in his business.  Plaintiff insists that while books
of account kept by a party himself or by his clerk are
under some circumstances admissible in evidence in his
behalf, they are not so admissible when the party him-
self is disqualified as a witness, unless the action is one
for the recovery of a sum or balance due on account.
*Anchor Milling Company v. Walsh*, 108 Mo. 277, was an
action to recover over payments alleged to have been
made by the plaintiff to the defendant.  The facts, as
stated by BLACK, J., who wrote the opinion of the
court, were about as follows.  Defendant had a contract
with plaintiff whereby he was to receive a certain price
for hauling wheat and flour to the mill and a certain
price per barrel and sack for hauling flour and other
mill products from the mill to other points    Books

were kept at the plaintiff's warehouse showing the
wheat and flour received and shipments made, and
the amount of hauling done by defendant. The orders
were entered in the shipping book by Timmons, the
shipping clerk, or by Mr. Warren, who had a general
supervision over all the business of the warehouse.
The orders were then copied into a small hand book
for the use of the foreman who delivered the articles to
defendant's teamsters, made a note of the fact and re-
turned the book to the clerk, who made entries on the
shipping book, showing, among other things, the de-
livery of the articles to defendant. Warren testified
that he always compared the orders with the book
when made up, and then returned the orders to the
mill office; that he knew the flour and other mill pro-
ducts were delivered to defendant from the information
received from the small book, and in some cases from
personal observation. These returned orders were lost
or destroyed. Timmons, the shipping clerk, was not
called as a witness. Under these facts, after an elab-
orate review of the authorities, it was held that the
shipping book should have been received in evidence.
The court said: "An account book of original entries,
fair on its face, and shown to have been kept in its
usual course of business, is evidence, even in favor of
the party by whom they are kept." The same con-
clusion was reached in *Robinson v. Smith*, 111 Mo. 205,
and in *Seligman v. Rogers*, 113 Mo. 642. The rule
seems to be that when book entries are made by a party
himself, or by his clerk, in the usual course of his bus-
iness, being contemporaneous with the fact, they are
admissible in evidence, and this we think is true even
though the entry be made by the party himself, or may
in some way extend to the title or ownership of the
property. Vette's incompetency as a witness being
waived by plaintiff, he was competent to testify to the

identity of the "debit book," and when it was shown by Shortal, the bookkeeper of Vette, in connection therewith, that he entered the Florida transaction in the book, and identified it, our conclusion is that the "debit book" was properly admitted in evidence.

Another contention is that where issues in a case involve the *bona fides* of one in whose possession a promissory note remains, upon allegations to that effect traversed by the other party, the want of consideration in the making of the note, connected with circumstances of suspicion calculated to put the party upon inquiry as to equities, is material to the case, and especially is this so where the proceeding is one in equity, as in this case. It is well settled that when a negotiable promissory note is transferred before maturity, the presumption is that the transferee or assignee takes it in good faith and without notice on his part of secret claims or trusts attached thereto in favor of third parties, or that the note was without consideration. And where the note is secured by a deed of trust, as in the case at bar, the deed of trust passes with the transfer of the note, as incident thereto, free from any and all defenses except such as could be made against the note. Under such circumstances the holder is not affected by subsequent notice of the equities or defenses of other parties. *Hagerman v. Sutton,* 91 Mo. 519; *Mayes v. Robinson,* 93 Mo. 114; *Fitzgerald v. Barker,* 96 Mo. 661; *Bank v. Rohrer,* 138 Mo. 369. Nor will mere suspicion alone that the note is without consideration brought home to the transferee before he acquires the note be sufficient to defeat a recovery upon the note by him. Bad faith alone upon the part of the holder in taking the note will not defeat a recovery by him against the party thereto. *Hamilton v. Barks,* 63 Mo. 167; *Goodman v. Simonds,* 20 How. (U. S.) 343; *Johnson v. McMurray,* 72 Mo. 278; *Mayes v. Robinson,* 93 Mo. 114. And we see no reason

in principle why the same rule should not apply when the proceeding is one in equity, and not an action at law upon the note.

There remains but one question to be disposed of which we think necessary to consider, and that is the effect of the release of the deed of trust by the trustee therein named, and Florida, the payee of the note, after he transferred it to Vette, upon the rights of plaintiff, the company being an innocent purchaser of the real property covered by the deed of trust after the recording of the release. It is claimed by plaintiff if the lien of a deed of trust is released by the trustee and the payee of a note, a presumption of authority and validity exists in favor of an innocent purchaser of the real property covered by such deed of trust who buys after the release is recorded, and that he who claims the deed of release to be void must prove the facts which result in that conclusion. Conceding this proposition to be true, that presumption was overcome when it was shown that Vette acquired the note for value from Florida before it became due, for the deed of trust by which its payment was secured passed to Vette as incident to the note, and thereafter neither Florida, nor the trustee Boucher nor both of them together had any power or authority to release the deed of trust without his consent.

Therefore the execution of the release by the trustee and Florida after Florida had sold the note to Vette was without authority and void. *Lee v. Clark*, 89 Mo. 553; *Hagerman v. Sutton*, 91 Mo. 533; *Bank v. Frame*, 112 Mo. 514; *Feld v. Roanoke Inv. Co.*, 123 Mo. 603; *Kelly v. Staed*, 136 Mo. 430.

The result is that the judgment of the circuit court must be affirmed, and it is so ordered.

GANTT, P. J., and SHERWOOD, J., concur.