## H. C. POUDER, Respondent, v. F. E. COLVIN, Appellant.

**Kansas City Court of Appeals, April 21, 1913.**

1. **NEW TRIAL: Evidence: Duty of Trial Judge.** Where the evidence relied upon to support the judgment contains unexplained inconsistencies and the vital question in issue is thereby left uncertain, and the trial judge shows by his certificate that his judicial conscience is not satisfied but that in his opinion a new trial should be granted in the interest of justice, his judgment in granting a new trial will be deferred to by the appellate court even in an equity case.

2. ———: **Bills and Notes.** In this case the fact that the evidence as to defendant's ownership of the note in question appears to the trial judge to be indefinite is not a good reason for granting a new trial since the ownership of the note was not qustioned in any way, and the proof of ownership made necessary by the nature of the case was prima facie sufficient and ample.

3. ———: ———. The fact that a case is not tried as efficiently as it might have been is no ground for a new trial.

4. **Estoppel.** Defendant cannot be estopped where knowledge is not traced to him; nor where it is not shown that plaintiff was induced or led to change his situation by anything defendant did or failed to do.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas*, Judge.

AFFIRMED.

*Sebree, Conrad & Wendorff* for appellant.

(1) Is the attempted release by Howard invalid, if he was not the owner of the note, and was not au-

thorized by the owner thereof to make the release?
Investment Co. v. Vette, 142 Mo. 574; Joerdens v.
Schrimpf, 77 Mo. 382; Brown v. Koffler, 133 Mo. App.
501; Bank v. Life Ins. Co., 145 Mo. 142.  (2)  Was the
circuit court justified in granting a new trial to re-
spondent?  Sec. 2514, R. S. 1909; State ex rel. v. Wood,
155 Mo. 447; Schuester v. Meyers, 148 Mo. 429; Greer
v. Bank, 128 Mo. 559; Whittiker v. Gas Co., 16 W. Va.
717; Brookman v. Metcalf, 5 Bosw. (N. Y.) 445; Fret-
well v. Laffoon, 77 Mo. 26; Richardson v. Farmer, 36
Mo. 46; Shotwell v. McElhinney, 101 Mo. 683; Titt-
man v. Thornton, 107 Mo. 511; Parker v. Britton, 133
Mo. App. 278.

*Cowherd, Ingraham, Durham & Morse* for re-
spondent.

(1)  The court sustained the motion for a new
trial ''for the reason that the court is of the opinion
that the judgment rendered in this case was not jus-
tified by the evidence.'' This is equivalent to finding
that the verdict is against the weight of the evidence
and is not reviewable in the appellate courts. Craw-
ford v. Stock Yards Co., 215 Mo. 394; Johnson v.
Grayson, 230 Mo. 393; McKay v. Underwood, 47 Mo.
187; Bank v. Armstrong, 92 Mo. 265; Fitzjohn v. Tran-
sit Co., 183 Mo. 78; Taylor v. Railroad, 163 Mo. 191;
Canterbury v. Kansas City, 130 Mo. App. 4.  (2)  The
burden rests upon appellant to show the court erred
in granting the new trial.  Bed Co. v. Bank, 148 Mo.
482; Ensor v. Smith, 57 Mo. App. 584; Taliaferro v.
Evans, 160 Mo. 389; Bank v. Armstrong, 92 Mo. 278.
(3) The proof of ownership by Colvin was not satisfac-
tory, and unless Colvin was the owner he had no au-
thority to request the sale.  Greer v. Bank, 128 Mo.
559; Cantwell v. Johnson, 236 Mo. 607; Magee v.
Buick, 108 Mo. 336; Plummer v. Knight, 156 Mo. App.
321.  (4)  Colvin should be estopped from asserting

any rights under the note claimed to be held by him. Life Ins. Co. v. Smith, 117 Mo. 292; Adams v. Glossom, 228 Mo. 235; Eck v. Hotcher, 58 Mo. 235; Zweigert v. Reed, 221 Mo. 44. (5) Colvin's failure to take the stand should weigh strongly against him. Life Ins. Co. v. Smith, supra; Leeper v. Bates, 85 Mo. 228; Baldwin v. Whitecomb, 71 Mo. 657; Mabary v. McGraw, 74 Mo. 574; Kelly v. Hart, 74 Mo. 562.

TRIMBLE, J.—Injunction to prevent a foreclosure by defendant who claims to be the owner and holder of the note described in and secured by a deed of trust. The court found for defendant and dismissed the bill, but granted a new trial. From this order defendant appealed.

The deed of trust in question was executed June 10th, recorded June 22, 1903, and was given to secure a note of even date therewith for $2000, due five years after date with interest coupons attached. The whole trouble between the parties to this suit grows out of the fraudulent conduct of the beneficiary, Arthur M. Howell. He was a dealer in real estate, building houses in Kansas City and borrowing various sums of money from different sources. To secure these loans he would have his brother execute a note to him and secure it by deed of trust. Having a note payable to himself and thus secured, he, in some manner, would obtain the execution of a duplicate note, genuine as to signature, but fraudulent in that it could be negotiated as being secured by the deed of trust recorded as security for the original.

At the same time, not known when, Howell prepared a duplicate of the note secured by the deed of trust above mentioned, so that there were two notes in existence each apparently secured by the deed of trust. Under one of these notes, the deed of trust was released on the margin of the record June 4, 1909, by B. C. Howard as assignee. Thereafter another deed

of trust was placed on the property, under foreclosure of which plaintiff purchased and became the apparent owner. Defendant, as the owner and holder of the other note apparently secured by the deed of trust of June 10, 1903, began foreclosure thereof, whereupon plaintiff brought this action. The question is, which is the genuine note and which the fraudulent duplicate? If the note presented to and cancelled by the recorder, at the time of the marginal release by Howard as assignee, was the fraudulent duplicate, then such release was void, since he was not the holder nor owner of the note secured and had no authority from the true owner to make the release. [Borgess Inv. Co. v. Vette, 142 Mo. 560; Joerdens v. Schrimpf, 77 Mo. 383; Brown v. Koffler, 133 Mo. App. 494; Ripley Bank v. Life Ins. Co., 145 Mo. 142.] And defendant can foreclose said deed of trust without first having the attempted release set aside. [Authorities, supra.] On the other hand, if the note now held by defendant is the genuine note described in and secured by the deed of trust, defendant is entitled to foreclose without regard to the release made by Howard. So that the all important question at the trial was, which was the genuine note? The court sustained the motion for new trial "for the reason that the court is of the opinion that the judgment rendered in this case was not justified by the evidence. A transcript of the evidence has been made and submitted to the court, and on reading the same the court is of the opinion that the proof that Colvin was the bona fide holder and owner of the indebtedness and by reason of that authorized to demand a foreclosure of the property is indefinite and does not sufficiently establish that fact. The case was not as efficiently tried as it might have been, and the court is of the opinion in the interest of justice that there should be a rehearing of the matter." This may mean that the judgment was not justified by the evidence *because* the proof as to Col-

vin's bona fide ownership of the note was indefinite. Or it may mean that the judgment is against the weight of the evidence; and the indefiniteness of the proof as to Colvin's ownership and the inefficiency of the trial are stated as additional reasons why a new trial should be had. We prefer to adopt this last construction since it is the one adopted by counsel on both sides. As thus construed, the court, in effect, gives three reasons for ordering a new trial. First, because the judgment is against the weight of the evidence; second, because the proof as to Colvin's ownership of the note was indefinite; and third, because the case was not as efficiently tried as it might have been. The second reason given is not a good one since no question was raised either in the pleadings or in the evidence as to Colvin's ownership. Prima facie, he made a clear showing of ownership, and doubtless one reason why no more convincing or definite showing was made was because the bona fides of the ownership was not brought in question even indirectly. If it be said that he was required by the nature of the case to show his ownership of the note, he did this sufficiently to entitle him to a judgment so far as the bona fides of his ownership is concerned. The third reason is not a good one because if a judgment can be set aside for the reason that the case was not tried as efficiently as it might have been, then few judgments would stand. And such a rule would invite inefficiency and carelessness. If the case was inefficiently tried it is not apparent on the record, but even if it was, this would be no ground for a new trial.

This brings us to a consideration of the remaining ground, to-wit, that the judgment was not justified by the evidence. If this does not mean that the judgment is against the weight of the evidence, it does mean that the evidence is not sufficient, in the opinion of the trial court, to sustain the judgment.

As this is an equity case we are not bound by the findings of the trial court but can weigh the testimony and decide for ourselves *if the testimony is sufficiently strong and clear to definitely answer the vital question in the case.* That question, as stated before, is: Which is the genuine note secured by the deed of trust?

In support of the contention that his is the genuine note, defendant claims that the deed of trust and note were in the handwriting of and drawn up by Mrs. C. H. R. McElroy under the direction of her husband who took the acknowledgment as notary. And McElroy identifies defendant's note as being in his wife's handwriting. Defendant traces said note from the time of its execution until it came into his possession as follows: On the day the deed of trust was recorded June 22, 1903, Arthur M. Howell borrowed $8000 from the Pioneer Trust Company and put up as collateral five notes secured by deeds of trust, one of which is shown to be a "Howell note for $2000." This note, whether it be the genuine or the duplicate note, remained with the Pioneer Trust Co. until October 9, 1903, when according to the company's books the $8000 note was paid off and the collateral released, and presumably it was turned back to Arthur M. Howell. C. H. R. McElroy, for defendant, testifies that he on October 8, 1903, purchased for Howell the $2000 note and on the same day transferred it to his sister-in-law, Mrs. Alline H. Headley of Lexington, Ky. She assigned it to McElroy, McElroy assigned it to Lydia McChord, and she in turn assigned it back to McElroy on June 24, 1908. And said note was in the possession of these parties in Kentucky and of McElroy until some time in 1908, when McElroy took it to the Bank of the Republic and allowed it to be put up as collateral for a loan made by said bank to said Arthur M. Howell. At this time there was only about $750 due on the note, Howell having paid back to McElroy all due thereon except said balance. Said note was thus held

by the Bank of the Republic until it was taken up by the J. S. Chick Investment Company on September 17, 1908, and held by it as collateral security for a loan made by it to Arthur M. Howell. This loan was afterwards renewed and the Chick Company continued. to hold the said note as collateral until it was sold to the defendant on December 20, 1911, in order to pay said loan. It would appear from the above recital that a clear and unbroken chain had been shown in the ownership of the note now held by defendant from the time of its execution down to the institution of the suit. And it assumes that the note put up as collateral with the Pioneer Trust Company on June 22, 1903, was the genuine note and the same note bought by McElroy and sold by him to Mrs. Hendley. There are some facts, however, which seem to cast doubt upon this. McElroy says he bought the note from Howell October 8, 1903, while the Pioneer Trust Company's books show that Howell got it released as collateral from that company on October 9, 1903. Defendant explains this by showing that if Howell paid off his $8000 note after banking hours on October 8, he may have received his $2000 note which he sold to McElroy on the afternoon of that day, but the transaction would not show on the Pioneer's books until the 9th. The most conflicting thing about the whole matter is that McElroy says he did not purchase the note from Howell until October 8, 1903, and that on the same day he sold or assigned it to Mrs. Headley in Kentucky, and that it remained in the possession of the Kentucky people and of himself until he took it to the Bank of the Republic. But the indorsement on the back of the note shows that Arthur M. Howell on *June* 19, 1903, assigned it to Alline H. Headley. If this note, three days before the deed of trust securing it was recorded, was assigned to Mrs. Headley, it could not have been the one put up with the Pioneer Co. as collateral on June 22, 1903. Again, although McElroy

claims to have obtained possession of defendant's note October 8, 1903, and he and his Kentucky relatives held it until some time in 1908, yet on February 19, 1904, Howell again borrowed $2000 from the Pioneer Company and put up as collateral a note identical in terms with the one defendant now holds. So that, McElroy is either mistaken in his testimony or the note first put up as collateral with the Pioneer Company was not the genuine note, or there were two duplicate notes one of which was with the Pioneer Co. at one time and another at another time. So that, as the evidence now stands, it is uncertain whether defendant's note is the genuine one, or whether the note which was presented to the recorder when the release was made was genuine. Under these circumstances, after the trial judge has had an opportunity to study the evidence, he says that he is of the opinion that the judgment is not justified by the evidence and that "in the interest of justice there should be a rehearing." In other words the evidence is not sufficient to satisfy his conscience that a righteous judgment should be based upon it. The granting of a new trial is peculiarly within the province of the trial court where it is granted on the ground of the insufficiency of the evidence. And although the appellate court has the power in an equity case to weight the evidence and determine the cause for itself, it should not do so where the vital question at issue is left uncertain and the trial judge certifies that his judicial conscience is not satisfied but *that a rehearing should be granted in the interest of justice.* If the trial judge's conscience is not satisfied, and a new trial may result in a correct solution of the disputed question of fact, or, at least, render uncertainty less uncertain, ought not the appellate court to leave the cause to a new trial rather than attempt to finally decide the case on the testimony as it appears in cold and immobile type? We think it should, unless we can clearly see that the trial court is

mitaken as to the law or in his view of the evidential weight of the testimony. But the testimony in support of the judgment contains much uncertainty. Defendant's case rests largely on the testimony of McElroy who is either mistaken as to when he got the note or as to what note was put up with the Pioneer Company, or as to what note he got.

It is true McElroy says the deed of trust and the genuine note were in his wife's handwriting, but he destroys the force of this testimony by saying that there were many notes and deeds of trust drawn up for Howell under his direction, and he nowhere says this was the only note drawn by his wife.

We see nothing in the record from which it can be said that defendant is estopped from asserting his rights under the note. No knowledge of plaintiff's course was traced to defendant. Without knowledge there can be no estoppel. Again, it is nowhere shown that plaintiff was induced or led to change his position by reason of anything defendant did or failed to do.

In view of the uncertainty and inconsistencies inherent in the testimony concerning the note in question, and the dissatisfaction of the trial judge therewith, we will follow the rule of deferring in large measure to his judgment in the matter of granting a new trial. This is no hardship upon defendant since, although he is required to again submit his cause to the chancellor, he also has therewith abundant opportunity to remove the perplexities that now exist in his testimony. Judgment affirmed. All concur.