[S. F. No. 9933. In Bank.—April 4, 1922.]

# H. C. McCLENAHAN, Respondent, v. ALEXANDER D. KEYES, Executor, etc., Appellant.

[1] ESTATES OF DECEASED PERSONS—CLAIMS—EVIDENCE—INCOMPETENCY OF WITNESS—WAIVER—DEPOSITION.—In an action by a physician against the executor of the will of a deceased person, upon a claim for services alleged to have been rendered the daughter of the decedent, the plaintiff is an incompetent witness, but the incompetency may be waived by the executor, and is waived where the latter took the deposition of the plaintiff, although he declined to use it on the trial.

[2] CONTRACTS—MEDICAL SERVICES—LIABILITY.—The general rule is that one who calls upon a physician to render services to another is not liable for those services in the absence of an express agreement to pay therefor; and this applies where the physician is called by a parent to render services to an adult son or daughter.

[3] ID.—AGREEMENT TO PAY DEBT OF ANOTHER—GUARANTY—STATUTE OF FRAUDS.—The agreement of a mother to pay for medical services being rendered to her daughter is a contract to answer for the debt of another and if the services were performed upon the credit of the daughter, or if she was in any degree liable for the indebtedness, the mother would be a mere guarantor, not the original promisor, and where the contract of guaranty is not in writing it is void under the statute of frauds.

[4] ID.—ANTECEDENT OBLIGATION—AGREEMENT OF ANOTHER TO PAY—CONSIDERATION.—The promise of one to pay the antecedent obligation of another can be considered an original obligation, and therefore not required to be in writing, under the statute of frauds, only when made upon a consideration beneficial to the promisor, whether moving from either party to the antecedent obligation or from another person.

[5] ID.—PHYSICIANS AND SURGEONS — WITNESSES — EXPERTS—COMPENSATION.—A physician who has acquired knowledge of a

2. Liability of one who solicits the services of a physician or surgeon for another, notes, Ann. Cas. 1914C, 587; 46 L. R. A. (N. S.) 577.

5. Power to compel expert to testify, notes, 5 Ann. Cas. 993; 17 Ann. Cas. 715; 2 A. L. R. 1577

Validity of agreement to pay witness extra compensation, note, 30 L. R. A. (N. S.) 280.

patient, or of specific facts in connection with the patient, may be called upon to testify to those facts without any compensation other than the ordinary witness receives for attendance on court; and, in the absence of a contract therefor, such physician cannot recover additional compensation for services as an expert witness.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George A. Sturtevant, Judge. Reversed.

The facts are stated in the opinion of the court.

Morse Erskine and Herbert W. Erskine for Appellant.

Samuel M. Shortridge and T. J. Sheridan for Respondent.

WILBUR, J.—Plaintiff recovered a judgment in the trial court for services rendered as a physician in connection with the serious illness of Frances S. Howard, a daughter of the decedent, Anna Dwight Howard. The principal question in the case is whether or not the decedent, Anna Dwight Howard, entered into a contract of employment with the plaintiff for such services.

The plaintiff filed a claim against the estate of Anna Dwight Howard "for professional services of a medico-legal character rendered to and for the said decedent, at her special instance and request, in relation to Frances S. Howard, daughter of said decedent from January 8, 1915, to April 21, 1915, inclusive, at San Francisco, in San Mateo County, and at Redwood City, California, said services consisting of medical advice and services *given and rendered to the said daughter,* consultations with the said decedent and her representatives in respect of said daughter, time, attention and services rendered in certain proceedings in the Superior Court in the County of San Mateo, of said State, had and taken to secure the appointment of said decedent guardian of the person and estate of her said daughter, $1802.50. For moneys expended in and about the performance of the above services 18.50. Total $1821.00." (Italics ours.)

The complaint substantially followed the language of the claim except that the words "in respect" are inserted before the words "to said daughter," so that while the complaint alleges the rendition of medical services to the daughter, the complaint refers to said medical services as rendered "with respect to said daughter." The rendition of the services sued for is not questioned. The question is whether or not the decedent was liable at all for the services so rendered. The facts in the main are undisputed. Frances S. Howard was thought to be so insane as to be dangerous and on January 7, 1915, Leon Morris, an attorney at law, representing a brother of Frances S. Howard, Teddy Howard, who was at that time fatally injured, and to protect the brother, swore to a complaint charging Frances S. Howard with being an insane person. She was arrested on that charge and while awaiting trial placed in a sanatorium conducted by Doctor Bering. The next day, January 8th, owing to the critical condition of Frances S. Howard, who was unconscious, Doctor Bering telephoned the plaintiff, an alienist, to attend her. Her mother, who was then in the east, arrived in San Francisco January 18, 1915. The plaintiff charges $379.50 for the services rendered by him to the daughter before the mother arrived in San Francisco. He bases his claim against the mother upon a conversation he held with her immediately upon her arrival while she was ill in bed in the Fairmont Hotel. As he was the sole witness who testified to this conversation we will first dispose of the appellant's objection to the competency of the plaintiff to testify against the defendant executor. The appellant objected to the deposition of the plaintiff on the ground that plaintiff was incompetent as a witness. [1] Under the provisions of section 1880, subdivision 3, of the Code of Civil Procedure, the plaintiff was an incompetent witness against the executor. This objection to the incompetency of the doctor could be waived (*Kinley* v. *Largent,* 187 Cal. 71 [200 Pac. 937]), and the plaintiff relies solely upon such a waiver. The administrator took the testimony of the plaintiff by a deposition, but upon the trial declined to introduce the deposition and objected to the respondent introducing it on his own behalf. The district court of appeal held that by taking the deposition of the respondent, the administrator made him a witness and thereby waived the objection of

incompetency. The petition to transfer the case to this court was granted because of a doubt as to the correctness of this ruling for the reason that section 2032 of the Code of Civil Procedure, under which the deposition was taken, expressly provided that although the deposition might be used by either party and thus become the evidence of the party adducing it, its introduction in evidence is "subject to all legal exceptions." If the phrase "all legal exceptions" is broad enough to include the question of the competency of the witness it is evident that upon the tender of the deposition in evidence the objection might be successfully interposed by the executor (*Cudlip* v. *New York Evening Journal Pub. Co.*, 180 N. Y. 85 [72 N. E. 925]; *Bambauer* v. *Schleider*, 176 App. Div. 562 [163 N. Y. Supp. 186]).

After an investigation of the authorities we are satisfied that the ruling of the district court of appeal was correct. The phrase "subject to all legal exceptions" is one contained in the Practice Act with relation to the admissibility of depositions (secs. 430, 431, Practice Act, Stats. 1851, p. 119). It was held in *Turner* v. *McIlhaney*, 8 Cal. 575, that by taking the deposition of a witness otherwise incompetent because of interest, the objection was waived, and that the other party could introduce that deposition on his own behalf. The court in that connection said: "We think the intention of this section is that which its language plainly expresses. The defendant had the right to read the deposition. If it were otherwise, and a party should be allowed to take the deposition of any one or more of the adverse parties, and read, if it suited him—and if it did not, then to exclude it from the other side—the result would be, that a party, plaintiff or defendant, could always be fishing for evidence from adverse parties, without incurring any responsibility or danger on his part. The party who calls upon an adverse party to testify, makes him a witness. By making him a witness, he waives his incompetency to be heard for himself, or for his codefendant, or coplaintiff."

Similarly, in *Jones* v. *Love*, 9 Cal. 68, it was held that the objections to the competency of a witness based upon interest must be taken at the time of the taking of the deposition or otherwise waived. The same rule was followed in *Brooks* v. *Crosby*, 22 Cal. 42. It follows that the language of section 2032 of the Code of Civil Procedure, by which the

deposition is admissible subject to "all legal exceptions," does not authorize the competency of the witness to be questioned where he has been examined by deposition by the party opposing the introduction of the deposition. The supreme court of the state of New York has held that the objection to the competency of the witness as against an estate was not waived by taking the deposition (*Cudlip* v. *New York Evening Journal Pub. Co., supra*), but this was because of the statute of New York which expressly reserves the objection of competency to the time of trial. In Missouri, Tennessee, and Oklahoma it is held that the taking of the deposition waives the objection to the competency of the witness to testify against the estate (*Ess* v. *Griffith,* 139 Mo. 322 [40 S. W. 930]; *Borgess Inv. Co.* v. *Vette,* 142 Mo. 560 [64 Am. St. Rep. 567, 44 S. W. 754]; *Rice* v. *Waddill,* 168 Mo. 99 [67 S. W. 605]; *Thomas* v. *Irvin,* 90 Tenn. 512 [16 S. W. 1045]; *Percy* v. *Miller,* 115 Wash. 440 [197 Pac. 638].) The deposition was properly admitted in evidence.

The plaintiff testified in this action after the mother's death as follows concerning the conversation held with her:

" . . . Mrs. Howard had me explain the condition of her daughter, the situation, what had been done, what was necessary to be done. This conference was quite prolonged, a couple of hours I saw her, and in expressing her appreciation and approval of my efforts and my advice and my opinion of her daughter's case, *she assured me in words* and in manner *to go right ahead and give all of the services,* be unsparing in my time *in looking out for the daughter,* that it was very necessary for her to be in the hands of someone competent to understand the condition, *that I would be adequately compensated for my services.*"

Plaintiff relies upon this statement of the mother to establish his right to recover for the services already rendered by him in caring for the daughter, and those subsequently rendered in caring for her, and also as establishing a contract for the medical testimony of plaintiff as an expert given in the guardianship and in the insanity proceedings for which he charges about $899.50 as a reasonable fee.

Notwithstanding this alleged contract of employment, the plaintiff continued to make the charges upon his books against the daughter and subsequently brought suit against

the daughter for the full amount of the claim, alleging in that action that the services were performed *at the special instance and request of the daughter*. The respondent failed to recover in his suit against the daughter, except for the services rendered when she was unconscious, and thereafter filed his claim against the estate of the mother and brought this action.

As supplementing the statement of the mother the plaintiff relies upon certain transactions had with others, to establish her liability, and we will consider these matters before further considering the effect of the mother's statement. During the pendency of the guardianship and insanity proceedings, the former having been instituted by relatives of the daughter in accordance with the advice of the plaintiff, the mother was represented in said proceedings by an attorney and the plaintiff relies somewhat upon his dealings with this attorney to support his contention that there was a contract of employment between himself and the mother. The plaintiff also testified and relies upon the fact that before the mother arrived in California a telegram was received from her and read to him by the daughter's attorney. The plaintiff's testimony in that regard is as follows: That after he had rendered emergency services to the unconscious daughter he met Mr. Halsey Rixford, representing himself as the personal attorney of Miss Frances Howard, who said "that the mother of the patient was ill in the East, that he had a telegram—no, had telegraphed—and had instructions from the relatives, and to employ the services in the interest and for Miss Frances Howard. Later on I saw a telegram, the contents of which I cannot recall, *signed either by the mother or the brother-in-law*, Mr. Whitell, stating that they were on the way out, and to arrange the matters in regard to the daughter—the only other relative here was her injured brother, a patient at the Adler Sanatarium, Mr. Teddy Howard, hurt in an elevator falling— . . . ". Again he said: "It [the telegram] stated that the mother and son-in-law were on the way out and to go ahead and take care of the daughter until their arrival."

The evidence was objected to on the ground that it was incompetent, irrelevant, and immaterial and hearsay. The court ruled as follows: "Oh, no, it is not, but until it is con-

nected that cannot be brought. out. . . . The objection is overruled. However, the question has got to be connected before it can be used against your client.''

A telegram from Mr. Whitell would clearly be immaterial and incompetent unless it was shown that he was acting for the mother, and evidence that a telegram was exhibited to the plaintiff by the attorney of the daughter, without some evidence that the telegram was sent by the mother or by her authority, would be immaterial.

A brother, William D. N. Howard, employed Dr. Teass to look after the daughter. Teddy Howard, the injured brother, employed Doctor Chidester. With reference to various relatives with whom he conferred, plaintiff testified: ''I was assured to go ahead *by all concerned,* and I was to be adequately remunerated; no definite statement as to who should do that or as to how or what it should be.'' Plaintiff testified that he was in daily attendance upon the daughter up to the 30th of January.

The daughter was a wealthy woman and able to pay for the services rendered to her. The mother was not liable for such services in the absence of a contract on her part to pay therefor. Appellant claims that the evidence is altogether insufficient to establish either an express or an implied contract on the part of the mother to pay for the services rendered to the daughter. [2] The general rule is that one who calls upon a physician to render services to another is not liable for those services in the absence of an express agreement to pay therefor. (40 Cyc. 2808, 2809.) This applies where the physician is called by a parent to render services to an adult son or daughter (*Crowell* v. *Donoho,* 168 Mo. App. 305 [153 S. W. 1082]; *Crane* v. *Baudouine,* 55 N Y. 256; *McGuire* v. *Hughes,* 207 N. Y. 516 [Ann. Cas. 1914C, 585, 46 L. R. A. (N. S.) 577, 101 N. E. 460]; *Boyd* v. *Sappington,* 4 Watts (Pa.), 247), and to services rendered to a daughter-in-law (*Dorion* v. *Jacobson,* 113 Ill. App. 563), or to a wife's relative (*Curry* v. *Shelby,* 90 Ala. 277 [7 South. 922]).

In the case of *McGuire* v. *Hughes, supra,* the rule is thus stated: ''The general rule that, where a person requests of another the performance of services, which are performed, the law implies a promise by the former to pay their reasonable value, has no application in the case of a physician,

rendering professional services to a third person, if the relation to the patient of the person who requests them, be not such as imports the legal obligation to provide them."

It is clear, therefore, that the mere request of the mother that the plaintiff render services to the daughter would not be sufficient to imply a contract to pay for such services. In determining whether or not the mother agreed to pay for the services rendered to the daughter, it is important to bear in mind that the plaintiff advised the mother that the daughter was incompetent and for that reason should be placed under guardianship. Her statement that the plaintiff would be adequately compensated for services rendered and requesting him to render such services must be construed in the light of that situation. The amount of the compensation to be allowed to the plaintiff would be passed upon by the mother as guardian in the event that she was appointed, or if not, by such other relative as was appointed, and it was therefore important that plaintiff should know that the relatives of the patient, including the mother, desired that he should render services and were willing that he be compensated therefor. If it had been the intention either of the plaintiff or of the mother that she should become personally responsible for the payment of such services it would have been very simple for him to have secured from her a direct statement to that effect. The fact that the respondent carried the account on his books in the name of the daughter and subsequently brought suit against the daughter to recover the full amount claimed for all services rendered would seem clearly to indicate that he did not enter into an agreement with the mother that he would accept her as the primary debtor and there was nothing said by the mother as testified to by him which would indicate that the mother intended to assume that obligation in the place and stead of her daughter. On the contrary, it would seem that the mother studiously avoided stating that she would be personally responsible for the plaintiff's services.

If, however, it be assumed that the mother in fact promised to pay for the plaintiff's services another consideration would lead to the conclusion that there was no liability on the part of the mother for these services rendered to the daughter. Plaintiff was already performing services for the

daughter, presumably under a contract for that purpose. [3] The agreement of the mother to pay for such services so being rendered was a contract to answer for the debt of another. If the services of the plaintiff were performed upon the credit of the daughter or if she was in any degree liable for the indebtedness, then the mother would be a mere guarantor and the contract of guaranty not being in writing would be void under the statute of fraud. (*Harris* v. *Frank,* 81 Cal. 280, 286 [22 Pac. 856]; Civ. Code, sec. 1624.) The respondent made the charges for his services against the daughter upon his books instead of against the mother and thereafter brought suit against the daughter alone to recover for such compensation. The law is clear that if any credit was in fact given to the daughter the mother cannot be held as the original promisor, but at most as a mere guarantor. (20 Cyc. 182, 183; *Harris* v. *Frank, supra; Edelman* v. *McDonell,* 126 Cal. 210 [58 Pac. 528]; *Johnson* v. *Banks,* 60 W. Va. 320 [9 Ann. Cas. 893, 55 S. E. 395].) In cases of doubt the question as to which party is primarily liable is a question of fact (*Johnson* v. *Banks, supra*), but the conduct of the plaintiff establishes beyond doubt that he extended credit to the daughter, and the fact that he was unsuccessful in establishing his claim against the daughter cannot change the situation.

[4] What has been said is even more emphatically true with reference to the antecedent obligation incurred by or on behalf of the daughter. In such a case, in order that the promise of the mother to answer for the antecedent obligation of the daughter should be considered an original obligation and therefore not required to be in writing, the statute provides that the promise is deemed original only when made upon a consideration beneficial to the promisor, whether moving from either party to the antecedent obligation or from another person. There was nothing in the arrangement between the plaintiff and the mother to indicate that liability for the continued services of the plaintiff was to be assumed by the mother as a condition for the continued performance of services by the plaintiff in connection with her daughter. Assuming that the conversation between the plaintiff and the mother is susceptible of the construction that she was to pay for plaintiff's services, there was, therefore, no consideration for the agreement to pay for past

services and therefore such agreement, not being in writing, would be void. (Sec. 2794, subd. 3, and sec. 1624, subd. 1, Civ. Code.) So far here as plaintiff's claim is based upon medical services, past or future, rendered to the daughter it is clear from the undisputed evidence that the mother was not liable therefor.

Plaintiff was defeated in his suit against the daughter largely for the reason that his services were claimed by her to be hostile to her rather than for her benefit, as appears by the report of that decision. (*McClenahan* v. *Howard*, 50 Cal. App. 309 [195 Pac. 68].) The plaintiff's claim against the mother includes a large sum ($789.50) for his services as an expert witness in the insanity and guardianship cases. Plaintiff charged $20 per hour for his detention as a witness in the superior court of San Mateo County at the time of the hearing of the guardianship proceedings. For one day his claim was $180. The authorities are not in accord as to the circumstances under which an expert who is called as a witness may receive compensation. Some courts even hold that a contract to pay extra compensation is void. The authorities, however, all agree that, in the absence of an express contract to pay a physician for his testimony as an expert, he is only entitled to the statutory fee. [5] The uniform rule seems to be that a physician who has acquired knowledge of a patient or of specific facts in connection with the patient may be called upon to testify to those facts without any compensation other than the ordinary witness receives for attendance upon court. In those states recognizing the right to extra compensation for a physician who testifies as an expert it is uniformly held that where such testimony is sought to be elicited without requiring any particular investigation on the part of the physician that he is required to testify without extra compensation. (*People* v. *Conte*, 17 Cal. App. 771, 784 [122 Pac. 450].) For general discussion of the subject, see 5 Ann. Cas. 994; 17 Ann. Cas. 715; 31 Ann. Cas. 490, 491; 40 Cyc. 2186; 37 L. R. A. 671, 30 L. R. A. (N. S.) 281; 2 A. L. R. 1577, 1578. We do not need to determine the exact limits of the rule in this state, for the reason that there is absolutely no showing of any agreement to pay the physician for his services as an expert witness, as distinguished from his services as a physician in the case. There is no suggestion or intimation in the con-

versation between the respondent and the mother that he was being employed to testify as an expert, and the lawyer who represented the mother in the insanity proceedings testified that absolutely no agreement was made by him to secure the testimony of the respondent as an expert witness. It is clear that under these circumstances the witness having attended voluntarily and testified, cannot recover extra compensation on the theory that he was an expert witness and that his expert knowledge was involved in his testimony. There is no implied contract for the payment of extra compensation due to the fact that the respondent was used as a witness. The law fixes the fees of a witness and the only obligation incurred in the summoning of a witness is the obligation to pay the fees which the law fixes for the attendance of a witness. If there is any further or additional obligation it must arise from an express contract relating to the particular subject of the testimony and based upon the fact that the witness is required to use his expert knowledge in testifying.

There was no contract to pay the plaintiff any additional compensation for his services as an expert, or in preparation for testifying as such, hence he cannot recover for such expert testimony. In this connection it should be observed that the employment of the plaintiff as the physician for the daughter was inconsistent with the idea that he would be an expert witness, for by such employment he became incompetent as a witness without the daughter's consent (Code Civ. Proc., sec. 1881, subd. 4).

The evidence is insufficient to support the findings of the trial court in favor of the plaintiff.

Judgment reversed.

Shaw, C. J., Shurtleff, J., Lawlor, J., and Sloane, J., concurred.

Rehearing denied, the Justices qualified to act not agreeing upon a rehearing.