[Civ. No. 7242. First Appellate District, Division One.—March 23, 1931.]

FRED H. ZUMWALT, Respondent, v. JACOB SCHWARZ et al., Appellants.

Goldman & Altman for Appellants.

Dunne, Dunne & Cook for Respondent.

KNIGHT, J.—The plaintiff, Fred H. Zumwalt, a physician and surgeon, brought this action against Jacob Schwarz, also a physician and surgeon, and the executors of the last will of Charles W. Haas, deceased, to recover the sum of $1500 claimed to be due for medical services rendered by plaintiff to the deceased during his lifetime, and upon trial a jury awarded him a verdict against all of the defendants for the full amount claimed. Judgment was entered accordingly, and defendants have joined in taking this appeal therefrom.

Haas had been under the medical care of Schwarz for some time and when his condition became critical Schwarz,

with the approval of his patient, called in Zumwalt to assist him. Thereafter Zumwalt continued to collaborate with Schwarz in the treatment of Haas up to the time of the latter's death, which occurred some four months later. It is contended on behalf of Schwarz as one of the grounds of appeal that in calling in Zumwalt he acted merely as the agent of his patient and consequently is not liable for the payment of any part of Zumwalt's fee. We are of the opinion that this contention must be sustained.

█ Ordinarily, of course, where a person requests another to perform certain services the law implies a promise on the part of such person to pay the reasonable value of the services performed; but the authorities hold uniformly that such rule has no application to a case where a person requests a physician to perform professional services for another to whom the person making the request is under no legal obligation to furnish medical aid (21 R. C. L. 412; *McClenahan* v. *Keyes,* 188 Cal. 574 [206 Pac. 454]); and in the case last cited the Supreme Court of this state has declared that where no such legal obligation exists, one who calls a physician to attend another is not liable for the services performed in the absence of an express agreement to pay therefor. █ Furthermore, it is a general rule of agency that where an agent contracts on behalf of a disclosed principal the presumption is, in the absence of an agreement otherwise, that it was the agent's intention to bind the principal and not to incur a personal liability; and ordinarily the agent will not be held personally except upon clear and explicit evidence of an intention to substitute or superadd his personal liability for or to that of his principal. (*Heringer* v. *Schumacher,* 88 Cal. App. 349 [263 Pac. 550].)

█ Briefly stated, the circumstances under which Zumwalt was employed were as follows: When Haas' condition failed to respond to the treatments Schwarz was administering he concluded that certain major operations and extreme treatments were essential; and after talking the matter over with the members of Haas' family he consulted with Zumwalt. These consultations extended over a period of some five days, at the end of which time Schwarz phoned Zumwalt that he was very much alarmed about Haas' condition and that he had decided to operate at once; and he asked Zumwalt to be present and assist. Zumwalt informed him

that at that particular time he was about to operate on a patient of his own, but Schwarz urged him to defer that operation if possible and to come at once to the hospital, as he was "very anxious" about Haas' case. Haas was a man of much wealth, his estate having been appraised at approximately $1,800,000; and in soliciting Zumwalt's services Schwarz further stated, according to Zumwalt's testimony, "This is not the usual case we have been working together, but I want you to send your bill and I will see you get paid for it, that you get a good fee." Zumwalt insisted on taking care of his own patient first, however, immediately following which he hastened to the hospital to assist Schwarz. Upon his ·arrival there Schwarz again said to him, so Zumwalt testified: "I am nervous about it (Haas' condition), and I want you, I am particularly glad you got up, that you could come. . . . I will see that you get a good fee for this."

As will be seen, in none of the conversations between the parties. did Schwarz promise directly or by intimation that he would become personally responsible for the payment of Zumwalt's services. The strongest interpretation that can be placed upon his language is that he would see that Zumwalt was liberally compensated by Haas. And that such was the understanding of Zumwalt is clearly shown by a conversation he claimed to have had with Schwarz at a hospital about three weeks after .Haas' death, the substance of which he related as follows: "I said, 'By the way Jake, what about my bill in the Haas matter, to whom shall I send it and when.' Dr. Schwarz's face colored a little and he said, 'To tell you the truth, I have already been paid in the Haas matter, and I forgot about your bill.' He said, 'The family asked me to get the bills from all the doctors,' and he said, 'I didn't think of yours.' I said, 'That is a very peculiar circumstance, because you are the one who suggested you would take care of my bill in this matter,' and I said, 'If that is the case, the estate has not been closed, and there is no reason why I still am not able to put in a bill against the estate.' He said, 'I would rather you would not do that, it might embarrass me,' and some other words to that effect." Zumwalt nevertheless presented his claim against the Haas estate, averring therein, among other things, that his services had been rendered at

the special instance and request of the deceased and Schwarz; but the claim was rejected. And in further confirmation of such understanding Zumwalt testified that the reason he did not keep any office records of his services was that Schwarz said "he would take care of my fee and see that it was taken care of". It is evident, therefore, that construing the foregoing testimony most strongly in favor of plaintiff, it is as a whole legally insufficient, under the authorities above set forth, to charge Schwarz with a personal liability for the payment of said fee.

The further contention is made that the amount of the fee awarded by the jury was excessive, it being argued that the trial court erred in allowing plaintiff to show by the cross-examination of Schwarz that he received a fee of $15,000 for his services, and in refusing to give to the jury two instructions to the effect that in determining the value of Zumwalt's services the jury "was not to consider the financial condition" of Haas, and that it was limited in such determination to certain items of services specified in the instruction and which corresponded with the items set forth in the bill of particulars theretofore delivered by plaintiff to the defendants. We find no merit in any of the foregoing points. ■ The testimony relating to the amount of Schwarz's fee was received without objection on the part of defendants, and the proof showing the value of the Haas estate was admitted under stipulation. It would seem, therefore, that defendants are not in a position to complain of the effect of such evidence. ■ However, aside from the question of the admissibility of such proof, under the weight of authority it is held that the financial condition of a person receiving medical aid may be considered as affecting the reasonableness of the physician's charges; and even in those jurisdictions holding to the negative view it will be found that an exception is made in favor of the consideration of such proof where, as here, there is evidence of a recognized usage, which has grown into a custom, to graduate professional charges with reference to the financial condition of the patient, so that it may be considered that the services were rendered and accepted in contemplation of it (48 Cor. Jur. 1168). In other words, general custom or usage must be considered in determining the intent of the parties, and is in effect a part of the contract unless the

contract manifests a contrary intention (Civ. Code, sec. 1655). In the present case the several members of the medical profession who testified as to the value of Zumwalt's services, including Schwarz himself, all stated that it was the recognized usage and the established custom of the medical profession in fixing the amount of the medical fees to take into consideration, along with the other elements, the wealth or poverty of the patient. In applying such doctrine the courts of Pennsylvania have said: ''This state of affairs the law must recognize, that physicians should not have their services valued, as you would commodities in trade, by a fixed standard; what would be a proper charge for the same service to a man fully able to pay would be excessive to a man of limited means, and what would be willingly done for the indigent, without thought of financial reward, should be compensated for by one who can afford to pay on the scale which doctors of repute measure as the proper one.'' (*Pfeiffer* v. *Dyer*, 295 Pa. St. 306 [145 Atl. 284, 285].) And in quoting approvingly from an earlier case (*Succession of Levitan*, 143 La. 1025 [3 A. L. R. 1646, 79 South. 829]), the court goes on to say that it is ''a matter of common information that physicians and surgeons do not regulate their charges by any fixed standard of pecuniary value, but, to a certain extent base them on the ability of the patient to pay . . .''. In the state of New York, where the same rule is followed, the court said: ''. . . the evidence as to the value of the deceased's estate was properly allowed and properly taken into consideration, and that, together with the experience of the physician as such, and the nature and difficulty or easiness of the case, and what is considered by him and by other physicians an ordinary or reasonable charge for the services, are the proper elements upon which a judge or jury may act in fixing the value of the services.'' (*Schoenberg* v. *Rose*, 145 N. Y. Supp. 831, 833.)

▮ Irrespective, however, of the question of the materiality of evidence showing the financial condition of the patient, there is ample testimony in the record here to support the full allowance made by the jury for the reason that several witnesses testified that regardless of the financial condition of Haas, Zumwalt's services were reasonably worth from $1500 to $2,500.

740

■ Nor was there any error in the trial court's refusal to give the second instruction proposed by defendants for even assuming, as defendants assert, that plaintiff in claiming compensation was limited to the items of service set forth in his bill of particulars, the evidence introduced by plaintiff in this behalf did not extend beyond the general scope of such items. ■ The matter of consultations with Schwarz, which seems to be the sole ground of defendants' complaint, is adequately included in that part of the bill reading "and in addition thereto approximately six professional visits *and consultations*". (Italics ours.)

For the reasons above stated, the judgment as to the defendant Schwarz is reversed, and as to the remaining defendants it is affirmed.

Tyler, P. J., and Cashin, J., concurred.