[Crim. No. 514.   Fourth Appellate District.—August 25, 1938.]

THE PEOPLE, Respondent, v. JOE DE MELLO, Appellant.

Russell & Heid for Appellant.

U. S. Webb, Attorney-General, and R. S. McLaughlin, Deputy Attorney-General, for Respondent.

THOMPSON (GORDON), J., *pro tem.*—Two informations were filed, charging the defendant with offenses of grand theft, the stealing of three calves. The two cases were consolidated for trial and the defendant was convicted by a jury in both cases. While defendant gave notice of appeal in each case, but one record and one set of briefs have been filed, and it was stipulated that the two appeals might be considered together.

Appellant relies upon three grounds for reversal of the judgment: (1) That the judgment and verdict are not supported by the evidence, in that there was no corroboration of the accomplice, Joe Mendes. (2) That the court erred in sustaining an objection to appellant's offer of proof of the terms of probation imposed upon the accomplice Mendes. And, (3) that the district attorney committed prejudicial error in his argument to the jury when he referred to appellant's prior convictions; (which were charged and admitted).

The principal witness against appellant was one Joe Mendes, an admitted accomplice. Mendes testified in substance, that on the 10th or 11th of March, 1938, he and appellant left Visalia and drove to Avenal to look for employment on a pipe line. This trip was unsuccessful. On the 11th of March, 1938, they drove to the Alta Packing Company at Monson in an automobile owned by Mendes. While at the packing company, Mendes inquired of a Mr. Tripp, the owner, if he was interested in purchasing some calves. After the calves had been described to him, Tripp said that he would buy them. The evening of March 14, 1938, appellant met Mendes on the street in Visalia and there a conversation was had with one Freitas. During this conversation, appellant asked Freitas if

he had a cook out where he was working with one Joe Nunes. Freitas replied in the negative and stated he and the boss were the only ones out there. That appellant and Mendes drove out to the Nunes ranch and stole two calves which were placed in the pasture of Mendes and his brother. They then drove to the Goulart ranch and stole another calf. Early next morning, the calves were loaded in a trailer and taken by both Mendes and appellant to the Alta Packing Company where they were sold. Mendes transacted the business, signing the bill of sale and receiving a check made payable to him in the sum of $47.07. Mendes and appellant were arrested and charged with stealing the calves. Mendes entered a plea of guilty to the theft of the Nunes calves and made an application for probation which was by the court granted, upon certain conditions.

During the trial, evidence was presented by the witness Mrs. Mariana Goulart who testified that she saw appellant on March 13, 1938, at which time he asked her where they kept their cows. To this inquiry, she replied ''in the Calcote pasture''. She further testified that a calf had been stolen the night of March 14, 1938. The evidence disclosed that three or four days after appellant was released from jail, he came to the Goulart ranch and asked the witness if she was coming to court. Upon being told that she and her husband were, if called, appellant stated ''he would pay for the calf and all expenses, if I did not come to court''. That she was present when appellant made a similar statement to her husband.

The witness Augustino Goulart testified in substance: That he lost a calf the night of the 14th and later saw the calf at the slaughter house. Several days later, appellant told Goulart he would pay for the calf and expenses, if he did not go to court. He further testified that appellant asked him to say that the calf was not his.

One Freitas, called by the People, testified to meeting appellant and Mendes in Visalia, at which time appellant asked him ''who was cooking out there'', to which he replied ''me and Joe Nunes was''. The afternoon of the 15th at the slaughter house, he identified the two calves as the property of Mr. Nunes.

The owner of the packing house testified that about the 11th or 12th of March, Mendes came to him and inquired about selling some calves. He believed another man was in the automobile with Mendes, but was not positive. On March 15th, he purchased the calves in question and transacted all of the business with Mendes alone. That appellant was with Mendes and helped to unload the calves which were brought to him early in the morning.

Appellant, testifying in his own behalf, denied being present when the calves were stolen, or of knowing that they had been stolen, when he assisted Mendes in taking them to the slaughter house. Denial was also made as to appellant receiving any money from Mendes from the sale of the calves. He did admit offering to pay Goulart for his calves and expenses, but testified that his reason for doing this was that he had been convicted of three felonies and would rather pay for the calves than go to court. In the same conversation, he denied any participation in the theft. Appellant urges that this evidence was insufficient to corroborate the testimony of the accomplice.

In *People* v. *Yeager*, 194 Cal. 452 [229 Pac. 40], the rules with respect to corroborative evidence are thus set forth:

"It has been held that to corroborate an accomplice, the evidence need not establish the actual commission of the offense, nor extend to every fact and detail covered by the statements of the accomplice, or to all the elements of the offense, nor prove that the accomplice had told the truth. The corroborative evidence must tend, in some slight degree, to implicate the defendant. While it need not be strong, more is required by way of corroboration than mere suspicion. It is sufficient if the corroborating evidence tends to connect the defendant with the commission of the offense, though, if it stood alone, it would be entitled to little weight. It is not necessary to corroborate the accomplice by direct evidence. If the connection of the accused may be inferred from the corroborating evidence in the case, it is sufficient."

Although the corroborating evidence was slight, there was evidence which tended to connect the appellant with the commission of the offense. No complaint is here made as to any instructions given by the trial court. The jury was instructed that Joe Mendes was an accomplice. It was also instructed

as to what was necessary to be established before a conviction could be had upon an accomplice's testimony. The jury, by its verdict, signified its belief in this testimony, as required by law. We cannot say from the record in the case that there was not sufficient corroboration of the testimony of the accomplice, Joe Mendes.

Appellant further urges that the trial court erred in sustaining an objection to appellant's offer of proof as to the terms of probation imposed upon the accomplice Mendes. On cross-examination, Mendes admitted being charged with stealing the calves. To this charge, he entered a plea of guilty and made application for probation. His application was heard by the same court which conducted the trial of appellant. Mendes denied having a conversation in appellant's automobile, in the presence of a Miss Morsalian, now Mrs. De Mello, at which time she asked him if it was true that Joe De Mello was implicated in this cattle stealing matter, to which he replied, "No, he's not, but I have to implicate him so that I may get probation."

Mrs. De Mello, called as a witness for appellant, testified that the statement was made by Mendes in response to the question asked by her. Whereupon, counsel for appellant offered in evidence the files and records of the court in the case of *People* v. *Joe Mendes.* Counsel stated the offer was made for the purpose of showing the conditions imposed upon Mendes at the time his application for probation was granted. The court sustained an objection made to this offer.

From the record before us, it appears that when Mendes was granted probation, there were certain conditions imposed, such as restitution and fine. There was also, in addition to the usual terms and conditions imposed, a statement by the court, which was:

"Now in referring to this cooperation with the district attorney, it will be understood that the defendant must honestly and fully and completely tell any and all circumstances which he may be called upon to testify to, in regard to these matters involving the theft of the calves described in the probation officer's report and in his statement, to which the court has already referred; and I mean by that, that this court will not be satisfied with neglect to make an honest and full statement as to any matter which must be within the knowledge

of the defendant in regard to those matters; that he must take an affirmative stand as a witness, and not a negative.''

The other information charging Mendes with grand theft, was dismissed on motion of the district attorney. The ground of said motion was ''In furtherance of justice.''

Where there was evidence as here presented, the jury was entitled to know, not only that probation had been granted to the accomplice, but was also entitled to know the conditions. It was for the jury to pass upon the credibility of the accomplice. Any circumstance tending to show interest, bias or prejudice, would be a proper subject of inquiry. The accomplice had received favorable consideration of the court by the granting of probation. The court, in effect, not only required the accomplice to testify against this appellant, but directed him, when he appeared as such witness, to take an affirmative stand and not a negative one. What effect, if any, did this have upon the accomplice, when called to testify in the trial of appellant? Did it affect his testimony by showing a strong motive to color his testimony? These are questions the jury should have had presented to it. It is the exclusive judge of a witness' credibility. (Sec. 1847, Code Civ. Proc.)

▪ Where motive or state of mind of a witness is the object of cross-examination, questions which would have a tendency to show bias of a witness are not only competent, but great latitude on cross-examination should be allowed in developing its existence. (*People* v. *Pantages*, 212 Cal. 237, 239 [297 Pac. 890].) We believe this same principle of law applies to the case at bar. Under the circumstances here existing, the trial court committed prejudicial error in precluding the jury from being apprised of all the conditions imposed on the accomplice in granting him probation.

▪ Appellant urges as another ground of reversal, misconduct of the district attorney in making a certain argument to the jury, and error of the court in a comment made in ruling on an objection to that argument. The argument of the district attorney and the statement of the trial judge were, to a certain extent, improper and should not have been made. However, the question as to whether they were sufficiently prejudicial in themselves to justify a reversal, need

not be considered, since there must be a reversal of the judgment for the reason above set forth.

The judgments and orders denying motions for a new trial, are, and each is, reversed and a new trial granted.

Barnard, P. J., and Marks, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 21, 1938.