[Civ. No. 13635. Second Dist., Div. Two. Oct. 16, 1942.]

SIGRID CRUTCHFIELD et al., Appellants, v. DAVIDSON BRICK COMPANY (a Corporation) et al., Respondents.

Nadia Williams for Appellants.

Jennings & Belcher and Louis E. Kearney for Respondents.

WOOD (W. J.), J.—Plaintiffs commenced this action to recover a judgment for damages which they suffered when a car driven by Joe Booth, in which they were riding as guests, collided with a truck owned by defendant Davidson Brick Company and driven by its employee, defendant Carillo. They have appealed from a judgment in favor of defendants, entered upon the return of a jury's verdict.

The accident occurred on July 8, 1940, at the intersection of Main and Workman Streets in the city of Los Angeles. Witnesses for plaintiffs testified that Carillo entered the intersection before the "Go" signal was given. This was contradicted by witnesses for defendants, who placed the blame for the accident upon Booth.

Plaintiffs contend that the court erred in giving to the jury "abstract instructions" on the law of negligence as applicable to the conduct of the driver of the car in which they were riding as guests, he not being a party to the action. The instructions of which complaint is made cannot be classified as "abstract." They particularly set forth the code provisions governing the conduct of drivers in intersections and

instruct the jury that if Booth violated the code provisions he was guilty of negligence as a matter of law and that if his negligence was the sole proximate cause of the plaintiffs' injuries the verdict should be in favor of defendants. Although the issue for the determination of the jury was whether defendant Carillo was guilty of negligence proximately contributing to plaintiffs' injuries, the jury of necessity was compelled to consider the conduct of the other driver while at and in the intersection, for the conduct of Carillo would depend to some extent at least upon the conduct of Booth. Defendants presented evidence that Booth entered the intersection against the signal and at a speed of 36 or 37 miles per hour. This was denied by witnesses for plaintiffs. In such a conflict in the evidence it cannot be held that plaintiffs were prejudiced by instructions enlightening the jury on the rights and duties of the two drivers. The instructions were very complete on all points involved and particularly informed the jury that the negligence of Booth could not be imputed to plaintiffs and could not defeat plaintiffs' recovery if the negligence of Carillo was a proximate cause of the injuries. ██ Moreover, the criticized instructions were invited by several instructions given at the request of plaintiffs on the subject of the negligence of Booth, one of which is as follows: "You are instructed that the negligence of the driver of the Ford in which the plaintiffs were riding as the guests of Joe Booth, if you find from the evidence that they were guests of Joe Booth, cannot in law be imputed or charged against the plaintiffs, and if you find from the evidence that the plaintiffs Sigrid Crutchfield and Mary Wilson were not guilty of negligence and that the joint negligence of both drivers was the proximate cause of the injuries suffered by the plaintiffs, if any, your verdict should be for the plaintiffs and against defendants." These instructions concerning the "joint negligence of both drivers" having been given at the request of plaintiffs, the court did not err in giving instructions to the jury concerning the legal duties of both Carillo and Booth.

After the jury had deliberated for several hours it returned to the court room for further instructions, and plaintiffs now assert that the oral instructions given on that occasion were confusing. Plaintiffs print in their brief only a part of the transcript of the proceedings at that point, asserting that "no purpose would be served to quote in full the oral instructions. . . ." Defendants have printed in their brief a com-

plete and lengthy statement of the proceedings which took place when the jury returned from its deliberations and we find therefrom that the court made no error in its oral instructions. The court referred to the main points of the instructions which had theretofore been given, without undue emphasis upon the contentions of either party. We find nothing therein which could be held to be confusing or prejudicial.

 A more serious question is presented by the denial of plaintiffs' motion for a new trial. A witness for defendants, Mrs. Jerry Mestas, testified at the trial that she was standing at the corner of Workman and Main Streets just before the accident; that when the signal changed from "Stop" to "Go," she stepped from the curb and proceeded 9 or 12 feet into Main Street, when she heard the crash; that she had not seen the accident. This testimony tended to corroborate the statement of Carillo, who testified that he did not enter the intersection until the signal changed.

In support of their motion for a new trial plaintiffs filed an affidavit by Mrs. Mestas, in which she stated that she had told the attorney for plaintiffs and also the investigator for the insurance carrier of defendants that she had not seen the accident and knew nothing about it; that the investigator told her that if she would say she was waiting to cross the street to board a street car and had to wait for the "Stop" signal to change and as she saw the "Go" signal she proceeded to cross the street and then heard the crash, "it was all that was necessary. . . . He told me it would be worth $20 to the company and that he knew how much good that money would do me. He persuaded me to accept his offer." Plaintiffs also filed an affidavit by Carl Galen in which the affiant stated that Mrs. Mestas had told him that the investigator for the insurance carrier had paid her $10 on the day he first called on her although she informed him she knew nothing about the accident; that the investigator had called on her subsequently and had told her that she could be a witness even if she had not actually seen the accident, provided she would give the testimony set forth in the affidavit of Mrs. Mestas.

The practice of paying witnesses sums greater than the statutory fees on the theory that they are being compensated for their time or that they are being prevented from suffering financial loss is not to be commended. A deep knowledge

of·human nature is not necessary in order to draw the conclusion that a witness liberally compensated for his time by the party serving him with a subpoena will be apt to color his testimony, or at least to present it in the light most favorable to the party who compensated him. Witnesses who learn of the practice of paying extra compensation are confronted with the temptation to make terms for their testimony. In such a situation there is opportunity for oppressive and corrupt conduct. The danger of paying witnesses liberally for their services was pointed out in the early case of *Dodge* v. *Stiles,* 26 Conn. 463 (1857), where the court said that witness fees should be fixed by court at a moderate sum, ''lest poor suitors should be unable to seek redress, and witnesses be tempted to lean toward wealth and power.'' The court observed that ''parties generally find it for their interest to take good care of their witnesses.'' ■ The practice under consideration has been growing in late years and it is now common knowledge that litigants having considerable business in the courts customarily ''take good care of their witnesses.'' Numerous instances have occurred in the trial courts where public employees subpoenaed to disclose information gained in the discharge of their duties have received extra-legal fees for attendance in court, notwithstanding their salaries were being paid in full from the public treasury. ■ If testimony by witnesses who have received extra-legal compensation is to be received, liberal cross-examination should be permitted by the trial court on the subject of the compensation to enable the jury to better pass upon their credibility.

■ Counsel for defendants point out that the trial commenced on June 9th and terminated on June 13th and that Mrs. Mestas was the last witness called to testify, and assert that the sum of $20 was not more than reasonable compensation for her time. It is not shown by the affidavits that the testimony given by Mrs. Mestas at the trial was untruthful or that any different testimony would be given if a new trial were ordered. The question whether a new trial should be ordered because of newly discovered evidence of the payment of $10 to the witness on the occasion of the first visit of the investigator and the subsequent payment of the additional sum of $10 was directed to the sound discretion of the trial court. The only new matter to be expected upon a new trial would be from the additional cross-examination of Mrs. Mestas, in which information could be elicited concerning her receipt of $20. The trial

judge was in the best position to determine whether a different verdict would be reasonably expected upon the receipt by the jury of the information contained in the affidavits. It cannot be held that the court abused its discretion in deciding this issue adversely to plaintiffs.

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.