[Civ. No. 17739.   Second Dist., Div. Two.   Oct. 18, 1950.]

LESTER W. McWILLIAMS, Appellant, v. LOS ANGELES
TRANSIT LINES (a Corporation), Respondent.

Arthur Strock for Appellant.

Morrow & Trippet and Henry R. Thomas for Respondent.

McCOMB, J.—From a judgment in favor of defendant after trial before a jury in an action to recover damages for personal injuries received in a collision between a streetcar and an automobile, plaintiff appeals.

*Facts:* After the jury had been empaneled to try an action for damages resulting from the alleged negligence of defendant, whose streetcar collided with an automobile in which plaintiff was riding, the foreman of the jury, Mr. Kroesche, read certain books on the subject of engineering which he had in his own private library. The information which he obtained therefrom, relative to the cohesive force between steel wheels

on a streetcar and the tracks upon which it ran, he used in his consideration of the case when it was submitted to the jury. These facts were brought to the attention of the trial court on a motion for a new trial through the affidavit of Arthur Strock, attorney of record for plaintiff, wherein he said in part:

"Herold J. Kroesche was foreman of that jury and as a juror voted for the defendant; said Mr. Kroesche is a Chemical Engineer and has been a Chemical Engineer since 1924. During the trial of the action, in open court, he asked of the Judge Presiding, Honorable Harold B. Jeffery, and of counsel for plaintiff and of counsel for answering defendant [Los Angeles Transit Lines, a corporation] what the weight of the streetcar involved in the accident was. He was then and there, in open court, given the answer that the streetcar weighed 43,500 lbs. not loaded.

"Said Mr. Kroesche owns and has in his private library certain books on the subject of Engineering; among them are Kent's Engineering Handbook, 1923 Edition, and Duff's Physics. During the course of the trial and before the case was submitted to the jury, at night in his home between sessions of court, and not during the actual course of the trial in court, said Mr. Kroesche examined said books for the purpose of determining, among other things, data re the cohesive force between the steel wheels of the subject streetcar and the steel tracks upon which it ran at and before the time of the subject accident, when the streetcar brakes are locked and its wheels are sliding. From his reading and calculations at that time, he reached the conclusion that if the streetcar involved in the accident is traveling at a speed of 20 miles per hour at a time when the brakes were first applied, and if the wheels became locked and sliding without interruption down to the time the streetcar stopped, that would cause the streetcar, with the wheels starting to slide at said speed of 20 miles per hour, to come to a stop 122 feet following the time when the wheels first began to slide. For the purpose of this computation, he assumed that the average velocity, from the time the streetcar first began to slide until the streetcar came to a stop, was 10 miles per hour. He used as a basis for his computation the cohesive force of steel streetcar wheels on steel streetcar tracks as he determined that cohesive force to be by reason of his said examination at home of the aforementioned books. At no time during the trial, in evidence in open court, was there any testimony as to said cohesive force or the effect it

would have in bringing the streetcar to a stop. His examination of said books and his determination therefrom of said cohesive force was a matter which he considered as a material factor, among other factors, in reaching his decision in the lawsuit.

"Said Mr. Kroesche did not mention to any of the other jurors in the case at that time that he had read the books as aforementioned, but in his discussions with jurors of the facts of this case, both as a juror and as a foreman of the jury he expressed opinions which were in a material degree, to what extent he cannot estimate, influenced, guided, and directed by his reading of the books as aforesaid."

*Question: Was the trial court correct in refusing to grant a motion for a new trial predicated on the statements in the affidavit of Attorney Strock?*

This question must be answered in the affirmative and is governed by these rules:

1. A juror cannot impeach his own or his fellow juror's verdict by an affidavit unless the verdict was reached by chance. (Code Civ. Proc., § 657, subsec. 2.)

2. Hearsay statements in affidavits are not admissible to impeach the verdict of a jury. (*Woods* v. *Pacific Greyhound Lines,* 91 Cal.App.2d 572, 577 [205 P.2d 738]; *Noble* v. *Key System, Ltd.,* 10 Cal.App.2d 132, 143 [51 P.2d 887]; *People* v. *Willis,* 70 Cal.App. 465, 475 [233 P. 812]; *Snoffer* v. *City of Los Angeles,* 6 Cal.App.2d 14, 16 [43 P.2d 852].)

Applying the foregoing rules to the facts in the present case it is evident that most of the statements contained in the affidavit could not have been predicated on anything other than hearsay evidence, for example that Mr. Kroesche examined books for the purpose of determining:

a. "Data re the cohesive force between the steel wheels of the subject streetcar and the steel tracks upon which it ran at and before the time of the subject accident, when the streetcar brakes are locked and its wheels are sliding."

b. That "from his reading and calculations at that time, he reached the conclusion that if the streetcar involved in the accident is traveling at a speed of 20 miles per hour at a time when the brakes were first applied, and if the wheels became locked and sliding without interruption down to the time the streetcar stopped, that would cause the streetcar, with the wheels starting to slide at said speed of 20 miles per hour, to

come to a stop 122 feet following the time when the wheels first began to slide.''

c. That ''for the purpose of this computation, he assumed that the average velocity, from the time the streetcar first began to slide until the streetcar came to a stop, was 10 miles per hour.''

d. That ''he used as a basis for his computation the cohesive force of steel streetcar wheels on steel streetcar tracks as he determined that cohesive force to be by reason of his examination at home of the aforementioned books.''

e. That ''his examination of said books and his determination therefrom of said cohesive force was a matter which he considered as a material factor, among other factors, in reaching his decision in the lawsuit.''

f. That he ''did not mention to any of the other jurors in the case at that time that he had read the books as aforementioned, but in his discussions with jurors of the facts in this case, both as a juror and as a foreman of the jury he expressed opinions which were in a material degree, to what extent he cannot estimate influenced, guided, and directed by his reading of the books.''

Clearly Mr. Strock could only learn Mr. Kroesche's purpose in examining the books from statements made to him by Mr. Kroesche. Likewise he could only know the conclusions which Mr. Kroesche reached as a result of statements to him by Mr. Kroesche. In addition he could only know that Mr. Kroesche assumed certain facts in his calculations by being told what facts had been assumed. Nor would it be possible for the affiant to know what went on in the jury room but from statements made either by Mr. Kroesche or other members of the jury. Finally, the only way that the maker of the affidavit could know that Mr. Kroesche was influenced in his discussions with the jurors by what he had read, and that Mr. Kroesche did not know to what extent he had been influenced, was by statements by Mr. Kroesche to him, which constituted hearsay evidence.

The trial judge was correct in declining to grant a motion for a new trial upon such hearsay evidence.

The foregoing reasoning is not inconsistent with the rule announced in *Pacific Solvents Co.* v. *Superior Court*, 88 Cal. App.2d 953 [199 P.2d 740]. Such case dealt with the requirements for the issuance of a subpoena duces tecum which involved section 1985 of the Code of Civil Procedure, which reads: ''*Subpoena duces tecum.* All applications before trial

for subpoenas duces tecum shall be accompanied by an affidavit specifying the exact matters or things desired to be produced, and setting forth in full detail the materiality thereof to the issues involved in the case, and stating that the witness has the desired matters or things in his possession or under his control.''

This section requires setting forth in full detail the full materiality of the papers which it is sought to have produced to the issues involved in the case. There is nothing in section 1985 of the Code of Civil Procedure which prohibits the issuance of a subpoena duces tecum predicated upon an affidavit which states facts which have been ascertained from hearsay. The case has no application to the prohibition in section 657, subsection 2 of the Code of Civil Procedure, which prohibits a juror from impeaching his own verdict except where the verdict has been determined by chance.

Affirmed.

Moore, P. J., and Wilson, J., concurred.