[Civ. No. 19269. Second Dist., Div. Two. Oct. 19, 1953.]

YETTA NEWMAN, Appellant, v. LOS ANGELES TRAN-
SIT LINES (a Corporation), Respondent.

Yetta Newman, in pro. per., Paul L. Zimmerman and Roger W. Powers, for Appellant.

Trippet, Newcomer, Yoakum & Thomas, Robert C. Carlson and Henry F. Walker for Respondent.

MOORE, P. J.—From a judgment based upon a unanimous verdict rejecting her suit for damages for personal injuries, plaintiff prosecutes this appeal. She asserts that the "judgment was obtained by fraud, perjury on the part of the defendant and each and every one of its witnesses concealing evidence from the court and jury producing a substitute operator instead of the actual true operator." She follows such assertion with her assignments of error and arguments thereon which will be treated in the same order in the following discussion.

The accident which caused plaintiff's injuries occurred according to the testimony of herself and her witnesses about 3:30 in the afternoon of December 19, 1948, on a "W" car

at the intersection of Normandie Avenue and Washington Boulevard in Los Angeles. In leaving the streetcar, plaintiff and her daughter, Mrs. Diamond, were preceded .by her witness Richardson. The substance of their testimony is in that of Mr. Richardson who testified that after the latter had alighted, he turned to find plaintiff ''on the lower step . . . she had already fallen from the streetcar . . . the car was stopped . . . the steps were down . . . her feet were on the ground . . . Mrs. Diamond would have fallen if I hadn't grabbed her . . . at the same time the car started up the step raised up.'' Mrs. Newman testified that the operator was ''approximately 23 years . . . wearing no uniform . . . wore some shabby plain clothes and no badge and no number . . . had no hat on . . . as soon as I attempted to get off by stepping just the first step . . . he got in motion with a violent jerk which was beyond my help or control and I hit landing on all steps and partly on the platform up on my neck and then that middle step so severely hit me in my lower back . . . He kept on raising it and he threw me off here. He acted like a drunk man and he was a very sickly, thin, emaciated looking fellow.''

It was established to the satisfaction of the jury that the car on which plaintiff rode to Normandie was No. 1536; the sole operator was Bailey; it carried on the westbound trip about 30 passengers when it reached Normandie, and not three as testified by Richardson; no accident occurred at that intersection. But since the sufficiency of the evidence to support the verdict is not in question, the assignments of error will be discussed in the order presented.

■ The first assignment is the court's overruling appellant's general objection to the following question propounded to her on cross-examination: ''Mrs. Newman, have you ever had a feeling of having a persecution complex?'' To which she answered: ''I don't.'' It is not improper to develop any feeling of antagonism or animosity of a witness toward a party. ■ But if such ruling had been error, it could have caused no prejudice since the answer was favorable to appellant. (*Ingalls* v. *Monte Cristo Oil & Dev. Co.*, 176 Cal. 128, 131 [167 P. 857].)

■ She complains of the court's adverse ruling on her general objection to the question: ''Have you. ever accused anybody of spying on you continuously?'' She answered that ''all kinds of attempts at frameups and wanting to run me down with a U-turn . . . another time engaging this

woman who sits here and three more who tried . . . to get a fight and to take me to the City Counsel . . . There were four of them against me . . . And you say persecution—there was nothing else but.'' The answer revealed the workings of her mind as intended by the inquisitor. With her own statement about frameups against her before the jury, they were more nearly able to weigh her testimony. By means of developing the situation of appellant with respect to her adversary, her interest, her motives, her inclination and prejudices, her powers of discernment and description, the cross-examiner placed the witness in her true light before the jury. Her answer showed that by reason of her suspicions she has erected a steel barrier of hate against her adversary. ■ It is a rule of universal application that a witness may be required to answer any question which tends to test his accuracy, veracity or credibility and especially in the case of a party to the action where he appears as a witness. (*Neal* v. *Neal*, 58 Cal. 287, 288.) ■ Great latitude should be allowed in developing the existence of bias. (*People* v. *DeMello*, 28 Cal. App.2d 281, 286 [82 P.2d 457].) Liberal cross-examination is the rule. (*Crutchfield* v. *Davidson Brick Co.*, 55 Cal.App. 2d 34, 38 [130 P.2d 183]; *People* v. *Wissenfeld*, 36 Cal.2d 758, 765 [227 P.2d 833].) But appellant made no specific objection to the question asked her. ■ An adverse ruling upon a general objection is never the basis for a reversal except in those instances where the testimony elicited is not admissible upon any ground whatsoever.

■ Appellant contends that the misconduct of respondent caused to be injected into the trial the question of ''how many prior attorneys appellant had had representing her in some phase of her case prior to the trial.'' She says it was first mentioned in respondent's opening statement or on the *voir dire* examination of jurors. Inasmuch as neither the opening statement nor the *voir dire* examination is in the record, it must be presumed that no error occurred in either. ■ Court and counsel are presumed to have done their duty in the absence of proof to the contrary. (Code Civ. Proc., § 1963, subd. 15.) A glimpse at the record discloses that it was appellant that infected the record with the charge that respondent had ''done everything to get away all of our lawyers and doctors'' and ''as many as you could entice to your side to work for your interests.'' ■ She maintains that the evidence shows clearly that respondent bought off her lawyers. But if respondent had incipiently injected the question of her

692

numerous counsel, not a single objection was interposed to the admissibility of the evidence. No motion was made for the jury to be instructed to disregard appellant's prior testimony relating to her erstwhile attorneys.

■ Appellant complains that an extraneous, immaterial issue was injected by respondent's asking her: "Is Communism behind this? . . . Have you accused anybody of being a Communist in this affair?" Not only was no objection made to such questions, nor motion made to forbid their repetition, but appellant appears to have relished the inquiry as another opportunity for denouncing the motorman and all who were opposing her lawsuit. She said a great many of "them" are engaged in Communism and some of the lawyers too; "it was a law of terror" that they practiced in her case. She had already testified that "a man" entered the streetcar following her daughter at Vermont Avenue; that he spoke to the motorman and "turned around and took a good look at us . . . at both of us . . . One woman went after me on Hoover and the regular motorman got off and this hoodlum got in who drove that car . . . There is a terrific background in this case. Wild things was done about me . . . It was nothing short of murder."

Appellant contends that it was error for the court over her objection to permit "a demonstration of the mechanical operation of the steps on the streetcar No. 1536"; that it was three years after the alleged accident and with a different and skilled operator. She ignores the proof adopted by the jury that Mr. Bailey was the only person who had operated car No. 1536 on the day she asserts Mr. Richardson helped her alight therefrom. After the court on respondent's motion had ordered a demonstration of the steps, appellant's attorney stated that he had "never raised any issue so far as mechanical defects are concerned. We claim negligent operation." Respondent's counsel replied that he purposed to show that the steps cannot be raised with more than 50 pounds whereas appellant's evidence had been that she sat on the second step— "spread out on the steps with my feet almost to the ground"; was 5 feet 3 inches tall and weighed in excess of 150 pounds. When asked by the court whether he objected to the demonstration, appellant's counsel stated: "Yes, I object to it. As a matter of fact, there is other testimony to the effect that she was not on the steps but leaning on the steps." The court again ordered the demonstration with the observation: "If there is enough in the record to justify several beliefs on the

point, perhaps it would be of assistance to go and see the step and see how it works.'' Following the view of the steps' operation, it was stipulated that the demonstrator would testify that when he opened the streetcar doors the air gauge showed 60 pounds pressure.

 Whether the court should grant the application for a view of a mechanical device whose operation was allegedly the cause of an accident is peculiarly within the discretion of the trial court. (*Nunneley* v. *Edgar Hotel*, 36 Cal.2d 493, 501 [225 P.2d 497].) No proof was made that the car used for the demonstration or that the manner of opening the doors was at all different from the condition of the device three years before. No other objection can on appeal be considered. (*Shields* v. *Oxnard Harbor District*, 46 Cal.App.2d 477, 489 [116 P.2d 121]; *Le Mesnager* v. *Hamilton*, 101 Cal. 532, 539, 540 [35 P. 1054, 40 Am.St.Rep. 81].)

 Appellant contends that a new trial should have been granted by reason of the fact that she and her daughter had testified at the trial that Bailey was not the motorman and because they have since identified one Edward Rexford King as the operator of car 1536 on December 19, 1948. New trials cannot be ordered merely because a dissatisfied litigant requests it. No fact or reason is asserted as a basis for believing that another trial might terminate with different results. The question of the identity of the operator was thoroughly tried; the records of respondent were produced in court to show that Bailey was the operator of car 1536 and he was on the witness stand to corroborate their accuracy. Appellant had solemnly testified that the car from which she fell was No. 1536. No contrary testimony was offered. Furthermore, appellant showed no such diligence as would warrant the granting of her motion for a new trial. She learned from the deposition of witness Prutsman on November 14, 1951, that King was the operator of the car that followed Bailey and car No. 1536; and that the company records contained a photograph of King. At the trial King's photograph was delivered to appellant's counsel who kept it during the trial. If Mrs. Newman knows now that King caused her injury she knew it 11 months prior to the trial. Such lack of diligence cannot be rewarded.

 Appellant assigns as error the conduct of the trial judge in ''permitting two jurors to sleep during most of the trial.'' There is no record to support such assignment. Not

an objection was made; not a request by appellant for the court to reprove somnolescent jurors. ▇ Moreover, before an appellant may urge such dereliction of a juror as ground for a reversal or a new trial, he must show affirmatively that neither he nor his counsel had knowledge of the fact prior to the submission of the case. (*Sherwin* v. *Southern Pac. Co.*, 168 Cal. 722, 725 [145 P. 92]; *Gray* v. *Robinson*, 33 Cal. App.2d 177 [91 P.2d 194].) ▇ If a juror may not impeach his verdict except by proof that it was the result of lot or chance (Code Civ. Proc., § 657; *McWilliams* v. *Los Angeles Transit Lines*, 100 Cal.App.2d 27, 29 [222 P.2d 953]), the rule should not be circumvented by permitting hearsay concerning a juror's conduct during a trial. (*Woods* v. *Pacific Greyhound Lines*, 91 Cal.App.2d 572, 577 [205 P.2d 738].) ▇ But if two jurors had slept throughout the trial, no prejudice was suffered. The jury returned a unanimous verdict, whereas the law required only three fourths of the jury to return a valid verdict. (See *People* v. *Thomas*, 108 Cal. App.2d 832, 837 [239 P.2d 914]; *Anderson* v. *Pacific Tank Lines*, 52 Cal.App.2d 244, 249 [126 P.2d 153].) Finally, not only is there no proof of the presence of the sleeping jurors, but at no time did the trial judge observe such phenomenon.

Appellant asserts that she was excluded from the view of the demonstration of the streetcar doors and steps and also that at the demonstration respondent's witnesses were allowed to make statements in the hearing of the jury. In support thereof she claims further that the reporter's transcript is incorrect in its report of the events that transpired.

▇ The transcript, once settled and approved, cannot be impeached by charges contained in a brief. (*County of Nevada* v. *Phillips*, 111 Cal.App.2d 428, 430 [244 P.2d 495]; *Sawyer* v. *Sterling Realty Co.*, 41 Cal.App.2d 715, 718 [107 P.2d 449]; *Brush* v. *Pacific Electric Ry. Co.*, 58 Cal.App. 501, 503 [208 P. 997]; *City of Chico* v. *First Ave. Baptist Church*, 108 Cal.App.2d 297, 301 [238 P.2d 587].) ▇ Inasmuch as error is not to be presumed, but must affirmatively appear in the record, it must be held that the criticized acts did not occur. No objection is found in the record to any ruling of the court and there is no evidence that appellant was excluded from the demonstration or that it was suggested. The presumption is that the incidents of the trial occurred as reported.

Error is assigned in that appellant's witness, Mrs. Suchman, was not permitted to testify after having been sworn. After

respondent had rested, appellant called in rebuttal Mrs. Provin. The latter testified concerning the behavior of appellant after December 19, 1948. Thereupon, it was stipulated that the testimony of Mrs. Suchman would be substantially the same as that of Mrs. Provin. Since the need for the lady's testimony had disappeared, counsel for appellant did not call her. ▇ By reason of the fact that an attorney is agent of his client and is empowered to conduct the cause during its pendency (*Clemens* v. *Gregg,* 34 Cal.App. 245, 253 [167 P. 294]), his agreements with reference to calling or excusing a witness are binding upon his client. (*Brock* v. *Fouchy,* 76 Cal.App.2d 363, 372 [172 P.2d 945].)

▇ Assignment is made that the court admitted the "hearsay" testimony of witnesses Lacy and Spencer as "not the best evidence and comes close to constituting forgery." The complaint is too late. No objection was made during the entire examination of these gentlemen. Therefore, error cannot be effectively asserted in the absence of objection to the introduction of the evidence. (*Zumwalt* v. *Schwarz,* 112 Cal. App. 734, 738 [297 P. 608] ; *Thomason* v. *Hethcock,* 7 Cal.App. 2d 634, 638 [46 P.2d 832].) Having failed to object at the trial, objection to evidence cannot for the first time be interposed in the appellate court. (*Hughes* v. *Grandy,* 78 Cal.App. 2d 555, 570 [177 P.2d 939].)

Because the deposition of witness Prutsman gave two different times of day for the arrival of car No. 1536, appellant charges error in the court's receiving same. Such deposition was read into evidence by appellant's counsel, not by respondent. ▇ "An appellant cannot base his appeal on the admission of testimony which was read to the jury by his own counsel. (*People* v. *Harby,* 51 Cal.App.2d 759, 769 [125 P.2d 874] ; *Gjurich* v. *Fieg,* 164 Cal. 429, 433 [129 P. 464, Ann.Cas. 1916B 111].) ▇ Moreover, inconsistencies do not render testimony inadmissible. Such matters are to be resolved by the trial court. (*Kuhn* v. *Gottfried,* 103 Cal.App. 2d 80, 84 [229 P.2d 137].)

▇ The court gave the following instruction :*

"If, prior to the trial, the deposition of a party to the action was taken, and if all or part of it was read into evidence, and if, in said deposition she made contradictory statement or statement in conflict with her testimony here in court, you may consider such conflicts, and any explanation

*It is 31-A from B.A.J.I.

given therefor, in testing her credibility, in like manner as if all such testimony were given originally at the trial. The deposition, too, was given under oath. Also, if any statement in a party's deposition constituted an admission against interest, it may be considered in determining the truth or falsity thereof as well as in judging her credibility.''

Notwithstanding that correctness of the foregoing is not questioned, appellant claims it is prejudicial error because it ''singles out the plaintiff for the giving of the instruction and does not make it a general instruction applicable to all persons. . . .'' The fact is that it concerns and is limited to ''the deposition of a party to the action.'' Appellant is the only party who gave a deposition. The instructions which preceded 31-A were general and applied to witnesses as well as to depositions of witnesses, setting forth the rules that in judging credibility, a witness is presumed to speak the truth; that such presumption may be overcome by contradictory evidence, by the manner of testifying, by the character of his testimony or by evidence that pertains to his motives; that a witness false in one part of his testimony is to be disregarded in others; the jury may reject the whole testimony of a witness who has wilfully testified falsely on a material point, unless, from all the evidence, the jury believes that the probability of truth favors his testimony in other particulars; that the jury are not to discount testimony received by way of deposition for the sole reason that it was in form of deposition; that it is entitled to the same rebuttable presumption of verity and the same judgment of the jury with reference to its weight as that of any witness appearing on the stand. By reason of such instructions' having preceded 31-A, it cannot be reasonably asserted that appellant was singled out as the only one whose credibility was to be tested and determined by the jury. Appellant would reverse the rule and weigh and consider any one instruction separately from all others instead of reading it in its context. (*Perbost* v. *San Marino Hall-School for Girls*, 88 Cal.App.2d 796, 801 [199 P.2d 701].)

██ As to the use of Mrs. Newman's deposition, only two short questions were read from it to contradict the testimony she had just given on the stand. Such was proper practice as an aid to the jury's better understanding of the lady's testimony.

██ The court gave the following instruction:*

*B.A.J.I. 204-I.

"The relationship of passenger and carrier, during the existence of which the carrier is obligated to exercise the highest degree of care, continues while the passenger is in the act of alighting and until she has actually cleared the car or has had reasonable opportunity after leaving the streetcar to get beyond danger from its operation. When, however, she has alighted from the streetcar and has had the reasonable opportunity I have mentioned, from that time on she is no longer a passenger, and the carrier is not responsible for her safe passage thereafter to any intended point of arrival."

Appellant claims that she was prejudiced by the presence in the instruction of the following words: "she has actually cleared the car" and "she has alighted from the streetcar." But the portion containing the criticized words is exactly as appellant submitted it to the court. She is in no position therefore to complain of it. (*Yolo Water & Power Co.* v. *Hudson*, 182 Cal. 48, 51 [186 P. 772]; *Pomerantz* v. *Bryan Motors, Inc.*, 92 Cal.App.2d 114, 120 [206 P.2d 440].)

The following instruction was read to the jury:

"I instruct you that it would be a violation of your duty as jurors to consider the question of injuries or damages, if any, prior to determining the issue of liability or to allow the question of injuries or damages, if any, to affect your judgment in any way in determining the issue of liability. The first question for you to decide is whether or not the plaintiff is entitled to recover in this action against the defendant. If you find from the evidence that plaintiff is not entitled to recover, then it is your duty to immediately return the verdict in favor of said defendant." [Requested by defendant.]

Appellant claims that she was prejudiced thereby by reason of the fact that the language used therein "implies to the jury that plaintiff was not injured by the use of the words, to wit, 'injuries or damages, if any,' twice and the use of the words 'violation of your duty as jurors' and 'your duty to immediately return the verdict in favor of defendant' would lead the jury to believe that they had to bring in a verdict for the defendant and against the plaintiff."

No error is apparent in the instruction. ▮ It is trite to say that a jury must not appraise the damage suffered prior to finding whether the tort feasor is liable. That can be done only from the evidence. (*De La Torre* v. *Johnson*, 203 Cal. 374, 378 [264 P. 485]; *Church* v. *Payne*, 36 Cal. App.2d 382, 401 [97 P.2d 819].) ▮ The courts have gone

so far as to hold it prejudicial error (1) to refuse to advise the jury that instructions on damages have been given so that all law pertinent to the issues may be before the jury in the course of their deliberations; and (2) to reject an instruction that the giving of instructions on damages must not be considered as intimating any view of the court on the issue of liability or as to which party should recover judgment. (*Rasich* v. *Gladding McBean & Co.*, 90 Cal.App.2d 241, 243 [202 P.2d 576].)

 Appellant's criticism of the phrase "injuries or damages, if any" is hypertechnical Not only did respondent deny that appellant received any injuries but the evidence was such as would have justified a finding that respondent was not negligent and that appellant suffered no injury. The phrase "if any" does not, in the quoted instruction, imply that no injuries were received, but leaves to the jury the determination of whether Mrs. Newman was injured as she alleged or was not injured as respondent alleged. It enabled the court to instruct on the issues of liability and damage without assuming as a fact that injury had been sustained. (*Cooney* v. *Pirrelli*, 204 Cal. 4, 6 [266 P. 273].) The phrase is commonly used in instructions on the recovery for drug, hospital and doctor's bills.

 In her reply brief, appellant presents for the first time the question of error of the trial court's failure to instruct the jury on the doctrine of last clear chance. Questions presented in this manner will not ordinarily be considered by the appellate court in the absence of meritorious reason for the delay. But the court may nevertheless examine such matters, and may allow an appellant to discuss new points in a final brief upon application showing a reason such as sickness, inadvertence, or excusable neglect. (4 Cal.Jur.2d 324.) Appellant has made no such application and in fact failed to mention that this question was raised for the first time in her reply brief.

Appellant does admit that no such instruction was requested. Assuming that such an instruction would have been proper, the rule is that the failure of a trial court to give an instruction may not be reviewed on appeal unless the record specifies the instruction and shows that it was requested and refused. (*McFate* v. *Zuckerman*, 130 Cal.App. 172, 179 [19 P.2d 532].) This rule has been applied in cases of failure to instruct on the doctrine of res ipsa loquitur (*Mills* v. *Los Angeles Junk Co.*, 3 Cal. App.2d 546, 548 [40 P.2d 285] ;

*Comstock* v. *Morse,* 107 Cal.App. 71, 75 [290 P. 108]), and contributory negligence. (*Mella* v. *Hooper,* 200 Cal. 628, 631 [254 P. 256].) There is no reason why the giving of an instruction involving doctrine of the last clear chance should constitute an exception to this rule. The authority cited by appellant (*Sills* v. *Los Angeles Transit Lines,* 40 Cal.2d 630, 639 [255 P.2d 795]) is not in point since it concerns requested but refused instructions. It was not error for the trial court to fail to give the instruction in question on its own motion.

Judgment affirmed.

McComb, J., and Fox, J., concurred.

A petition for a rehearing was denied November 3, 1953, and appellant's petition for a hearing by the Supreme Court was denied December 17, 1953.